**Marie Whitty WHITE et al., Appellants,**

v.

**BROOKLINE TRUST COMPANY et al.,**
Appellees.

No. 7278.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 23, 1963.

Rehearing Denied Oct. 21, 1963.

Steeger, Dohoney, Jones & Caldwell, Houston, for appellants.

Spafford, Freedman, Hamlin, Gay & Whitham, Dallas, for appellees.

CHAPMAN, Justice.

The construction of an instrument in the form of a power of attorney constitutes the principal subject matter of this suit. The case is before us upon an appeal from the trial court's action in sustaining special exceptions.

Appellants, Marie Whitty White, et al., assert the instrument was executed in 1928

in favor of and to their predecessor, James B. Watson, by the heirs of David Wallace, predecessors of appellee, Brookline Trust Company.

There are ancillary questions raised concerning the extent of the trial court's action in sustaining appellees' special exceptions contained in their Paragraphs One and Two of their Second Amended Answer to appellants' Fifth Amended Original Petition, but the principal question presented to us is whether the instrument shows a present or future intention to convey minerals. We do not believe it is necessary to write on the other question. (All emphases herein are added).

Since all parties have agreed through their counsel that the intentions of the parties must be ascertained by construing the whole instrument from its four corners, we believe it well at the outset of this opinion to copy verbatim therefrom Paragraphs (1), (2), and (3) and the two paragraphs preceding Paragraph (1).

The instrument starts by saying:

"AGREEMENT made this 14th day of November, 1928, by ...... parties of the first part, and JAMES B. WATSON, ...... party of the second part,

"*WITNESSETH:*

\* \* \*

"WHEREAS said Watson has investigated *and is investigating the titles to* said estates,

"NOW, THEREFORE, in consideration of the premises and of one dollar ($1.00) and other valuable considerations paid by each of said parties to the other, the receipt whereof is hereby acknowledged, it is agreed by and between said parties as follows:

"(1) The parties of the first part do hereby fully authorize and empower the party of the second part to represent the parties of the first part in all matters pertaining to the interests of the parties of the first part in and *to* any and all mining and mineral estates wherever located in said Counties, *to bring or defend suits with regard to same in the proper State and Federal Courts of said State, with authority to remove all such matters from Court to Court as may be legally proper, to prosecute such matters to final judgment and to settle any and all claims affecting the interests and titles of the parties of the first part thereto,* with or without suit in such manner as he may deem best or advisable for the protection thereof, *to correct defects of title of the parties of the first part thereto* by preparation of proper written instruments and *to represent the parties of the first part as their attorney in any and all suits that may be filed against the parties of the first part* by reason of the interests of the parties of the first part in said mineral estates.

"(2) The party of the second part is to render all such services and perform such acts as he may deem advisable or necessary to do in connection with same, without expense to the parties of the first part or *to said estate of* David Wallace, and is to hold the parties of the first part and the said estate of David Wallace harmless and indemnified from any expenses which shall be incurred by the party of the second part in connection therewith.

"(3) The party of the second part *for compensation for such services as* have been rendered or *may be rendered by him in connection with said mineral estates, shall be entitled to receive one-half of all the proceeds received from the sale or other disposition of said mineral estates or the interests of the parties of the first part therein, including one-half of all sums that may be received by the parties of the first part therefrom* in the nature of rents, royalties or other income in any way derived from said interests."

■ A cursory glance at the instrument makes it obvious from the outset that it does not contain the statutory suggested form of words of grant conveying a present legal title to minerals underlying, or a mineral interest in lands, nor equitable interest in such lands. However, in this state inaccuracy of expression or the inaptness of the words used in the instrument are not fatal if the intention to pass the title can be discovered from a careful consideration of the instrument as a whole and the surrounding circumstances, or the instrument manifests by its terms the intention of the grantor to convey to the grantee. Baker v. Westcott, 73 Tex. 129, 11 S.W. 157; Harlowe v. Hudgins, 84 Tex. 107, 19 S.W. 364.

A study of all the cases cited and those found from independent research have not revealed a case directly in point on the facts before us where a court of last resort has decided it.

■ Our own court in Easley v. Brookline Trust Co., Tex.Civ.App., 256 S.W.2d 983, decided in 1952, passed on the very question before us. This court in passing upon the instrument here being considered, with none of the present members of the court then sitting said:

> "The agreement under which appellants claim attorney Watson was vested with title does not go that far as such agreement states Watson 'shall be entitled to receive one-half of all the proceeds received from the sale or other disposition of said mineral estates or the interests of the parties of the first part therein and including one-half of all sums that may be received by the parties of the first part therefrom in the nature of rents, royalties or other income in any way derived from said interest.' "

Petitioners, appellants in our court in that case, in their application for a writ to the Supreme Court of Texas raised the exact point in their Point Three as follows:

> "The court erred in holding that the contract between the Wallaces and Watson did not upon its execution vest Watson with a present interest in real estate."

The Supreme Court refused a writ with a notation of N.R.E. Unfortunately there were other points upon which they could have stamped the N.R.E. Though it is impossible under such circumstances for us to know if it agreed with the respondents on that particular point in connection with the rejection of the writ, we do not feel justified in completely disregarding the case.

Additionally, a careful study of the instrument from its four corners and the circumstances surrounding its execution has convinced us that it does not manifest a present intention to convey legal or equitable title to the minerals in question.

The very first word of the instrument, "Agreement", suggests the author of the instrument presumed there would be agreements on both sides as distinguished from a unilateral action such as a grant, though this record is silent as to whether such agreement was ever made or delivered or that the attorney ever asserted any claim to the minerals.

The instrument next recites ownership in the Wallace heirs of all the minerals involved, recites employment of Watson as their attorney to represent them in all matters pertaining to such minerals, to prosecute and defend to final judgment all suits or claims affecting their interests or titles and then provides as his compensation for such legal services he shall be entitled to one-half of all the *proceeds received from the sale or disposition of the mineral estates* or the interests of the mineral owners, including one-half of all *sums* the parties of the first part (the Wallaces) might receive in the nature of rents, royalties or other income derived from said interests.

We believe the words "proceeds received from the sale of said mineral estates" and "one-half of all *sums* that may be received by the parties of the first part * * *" included in numbered Paragraph Three must

be given meaning. When they are given meaning they seem to us to be incompatible with a present intention to convey. There seems to us to be no escape from the conclusion that the attorney was to receive his fee for his legal services from the sums received by the Wallace heirs from *their disposition* of the minerals inherited from David Wallace after the attorney had corrected the defects of title by prosecuting or defending to final judgment all suits in connection therewith or settling any claims affecting the interests and titles of the first parties thereto.

Though not directly in point the situation has some analogy to Carroll v. Hunt, 140 Tex. 424, 168 S.W.2d 238.

There, for legal services in connection with contesting a will the attorney was to receive a compensation of one-eighth of the property recovered to be paid in cash or kind. Justice Smedley in speaking for the court said:

"There are no words of present assignment, transfer or conveyance * * *. They promise to give a part of what may be recovered or to make payment in cash out of the proceeds recovered."

The court held the letter instrument indicating an intention to pay a one-eighth interest in money or in kind was to be after successful termination of the litigation and the payment was in consideration of services to be performed by the attorney.

Also, in Browne v. King, 111 Tex. 330, 235 S.W. 522, the interest of the attorney was a future one, when the property was recovered, and then only in consideration of the performance of the attorney's part of the contract. Those two cases are at least analagous to our own in that the attorneys in all of them were required to perform in the future. Unless they performed they had no interest in the recovery of the property or the fees. In Browne v. King, supra, the court held:

"The necessity for future action on Browne's part as the condition for the vestiture of any interest in his favor made the contract purely executory."

We, therefore, hold that the contract in the instant case, if it was entered into by Watson, was a contingent fee agreement executory in nature and did not constitute a legal or equitable assignment of a present interest in the minerals.

This conclusion has some support in the fact that the attorney never filed the instrument for record. Surely an attorney with the legal ability to command one-half of all sums the owners would be able to sell the minerals for under eight sections of land, for his services in clearing title, would know to file the instrument for record if he was claiming it as a grant of a present interest in the minerals. The record in Easley v. Brookline Trust Co., supra, in our court shows the instrument was not filed for record in Foard County until 1951, more than 20 years after its purported execution and then not by the attorney.

We are not unmindful of the line of cases represented by Green v. Biddle, 8 Wheat. 1, 5 L.Ed. 547, Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, and Frazier v. Hanlon Gasoline Co., Tex.Civ.App., 29 S.W.2d 461 (writ refused). We just believe they are distinguishable on their facts to the instant case. For example, in the latter case the instrument said: "Party of the First Part *does hereby vest* Parties of the Second Part with one-half interest * * *." Further, the attorneys in that case had the right to and did take control of the water and the sales of such waters to third parties. No such situation existed in the instant case.

The judgment of the trial court is affirmed.