887 F.2d 1078
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dale E. DUNCAN; Laura A. Duncan, Plaintiffs-Appellees,
v.
UNITED STATES DEPARTMENT OF the ARMY; American Express
Travel Related Service Company, Inc.; Thomas M.
Belcher; William Thomas Golden; Gary
L. Peisen, Defendants-Appellants.
 No. 88-2143.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 7, 1989.
Decided: Oct. 4, 1989.
 
 Freddi Lipstein (John R. Bolton, Assistant Attorney General, Henry E. Hudson, United States Attorney, Barbara L. Herwig, Civil Division, Department of Justice, on brief), for appellant.
 David John Fudala (Hall, Markle, Sickels & Fudala, P.C., on brief), for appellees.
 Before WIDENER and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The United States Army ("Army") appeals from an order denying its motion to apportion an award of attorney's fees and costs which the district court entered in favor of the Duncans.
 
 
 2
 Dale Duncan, a Lieutenant Colonel ("LTC") in the Army, and his wife sued the United States Army under the Right to Financial Privacy Act, 12 U.S.C. Sec. 3401 et seq. ("Act"), for examining their American Express records without their consent. After an initial dismissal which we reversed and remanded, see Duncan v. Belcher, 813 F.2d 1335 (4th Cir.1987), plaintiffs succeeded in obtaining a judgment in the amount of a statutorily prescribed $100 to each plus punitive damage awards of $4,000 to Duncan and $1,000 to his wife.[1] See Order dated September 25, 1987. The Army did not appeal the order entering judgment in the Duncans' favor.
 
 
 3
 Thereafter, the Duncans also sought an award of attorney's fees and costs claiming $51,543.75 and $8,951.89 respectively. The district court awarded the Duncans jointly $19,500 in attorney's fees and $3,063.31 in costs pursuant to the Act's provisions. See 12 U.S.C. Sec. 3417(a)(4).[2] Again, the Army took no appeal. See Order dated November 30, 1987.
 
 
 4
 As a result of an independent, but related, court martial proceeding held on November 20, 1986, a $50,000 fine had been assessed against LTC Duncan. As things have developed, the finality of the court martial decision, which was under appeal at the time of the decision here, will not come into existence until the end of 1989.
 
 
 5
 On April 27, 1988, the Army filed a postjudgment motion to apportion the attorney's fees and costs awarded jointly to LTC Duncan and his wife so that LTC Duncan's share of the award could be setoff against the military fine he owed to the Government pursuant to 31 U.S.C. Sec. 3728(a). Judge Bryan heard argument on the motion on May 6, 1988, and denied the motion, by separate order, entered the same day. The denial of the Government's motion to apportion and hold subject to setoff LTC Duncan's share of attorney's fees and costs was on the grounds that the purpose of the Right to Financial Privacy Act would be frustrated by such an apportionment and setoff. The Government timely lodged an appeal from the May 6, 1988 Order on June 23, 1988.
 
 
 6
 The following day, Judge Bryan heard argument on the Duncans' motion to enforce the judgment of the damages awarded to LTC Duncan. By Order dated July 25, 1988, the Government successfully obtained a setoff of the court martial fine as against the damages award for $4,000 and $100 in LTC Duncan's favor individually. The July 25 order did not refer to the Army's motion to apportion the attorney's fees and costs award or to the issue of setoff concerning that motion. The May 6, 1988 Order here remained in full force and effect.
 
 
 7
 On appeal there is a preliminary question of jurisdiction. The Government's appeal from the May 6, 1988 Order denying the motion to apportion and to setoff the court martial award against attorney's fees and costs, Duncan argues, was not from a final order for purposes of 28 U.S.C. Sec. 1291. However, the Army could not refuse, as soon as the May 6, 1988 Order was entered, to pay the award of attorney's fees and costs on the basis of a setoff of a debt determined in an independent, separate proceeding; authority to do so having been denied. Therefore, the Order of May 6, 1988 appears to be a final judgment disposing of issues before the court and the appeal of June 23, 1988 timely. We, therefore, address the merits of the arguments raised on appeal.
 
 
 8
 The setoff statute at issue here provides, in part, that "[t]he Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government." 31 U.S.C. Sec. 3728(a). The status of the $50,000 military fine as a debt is undisputed on appeal. Also undisputed is the fact that the United States owes Duncan and his wife jointly attorney's fees and costs awarded pursuant to 12 U.S.C. Sec. 3417(a)(4).
 
 
 9
 In refusing to apply the setoff statute, the district judge reasoned that to do so would be inconsistent with the purpose underlying the provision of the attorney's fees and costs in a Right to Financial Privacy Act case. The purpose in preventing apportionment he felt was to allow private individuals to interest attorneys, who because of the smallness of the award in such cases would not otherwise probably take them. Indeed, both parties agree that Judge Bryan correctly assessed the underlying purpose of the attorney fee provision and we are similarly persuaded.
 
 
 10
 Absent any relevant legislative history or case in point, the Army sought to rely primarily on United States v. Cohen, 389 F.2d 689 (5th Cir.1967). Cohen held that the attorneys' fees which the district court had awarded to the attorneys directly pursuant to 28 U.S.C. Sec. 2678 were derivative of the judgment against the United States and "subject to the government's right to set-off prior debts of the judgment creditor." Id. at 692. However, that case is clearly distinguishable. Cohen involved a claim under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. Sec. 2678, which does not specifically provide for establishment of attorney's fees to prevailing parties but rather places a limitation upon the percentage of a plaintiff's judgment which an attorney can receive as a contingent fee. The purpose under the FTCA was to meet a congressional concern about enormous fees at the expense of plaintiffs. The distinction in potential size of the awards for costs and attorney's fees under the two statutes is evident.
 
 
 11
 More in point is the analogous case of Plant v. Blazer Financial Services, Inc. of Ga., 598 F.2d 1357 (5th Cir.1979), dealing with consumer credit. That case involved a very similar statute, 15 U.S.C. Sec. 1640, which allows the costs of the action together with a reasonable attorney's fee. It states, in pertinent part:
 
 
 12
 (a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.
 
 
 16
 15 U.S.C. Sec. 1640.
 
 In Plant the Court observed:
 
 17
 This conclusion [not to permit setoff] is based upon careful consideration of the purpose of the Truth-in-Lending Act. The truth-in-lending legislation was enacted to assure debtors of accurate and uniform disclosure of the material features of credit obligations. An important enforcement mechanism of the Act is the provision in 15 U.S.C.A. Sec. 1640 making available double civil damages with a maximum ceiling of $1,000.00. As a practical matter, the award of attorney's fees is a critical and integral part of this section. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attorney. Allowance of attorney's fees in a successful action makes legal representation available in a manner analogous to the contingent fee system.
 
 
 18
 Were the attorney's fee award subject to setoff, the expectation of fees from a successful action might well be limited to the resources of the debtor in any case where the outstanding debt, being in default and subject to counterclaim, exceeded the recovery. To allow a setoff would in effect relieve the creditors in violation of the Act of the attorney's fee expense in the case of an insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objectives.
 
 
 19
 Plant, 598 F.2d at 1365-66. Setoff was not allowed, despite arguments, similar to those raised here by the Army, that the language of the statute prescribes that the award of attorney's fees is to be paid directly to the plaintiff. We agree with the Fifth Circuit's perceptive observation that the issue "is not whether plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of plaintiff's debt." Id. at 1366.[3]
 
 
 20
 The Army attempts to distinguish Plant on the grounds that the United States was not the defendant and, therefore, it does not address the United States' superior right of setoff as a limitation on the waiver of sovereign immunity. We can address the Army's contention briefly, as the issue is to us a red herring. The setoff statute codifies the " 'common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' " Cohen, 389 F.2d at 690 (quoting Gratiot v. United States, 40 U.S. (15 Pet.) 336, 370 (1841)). In Cohen, the "superior right of setoff" resolved the question of who, between the United States and another creditor,[4] should have priority in the plaintiff's judgment. The issue in the case before us, as in Plant, does not ask whose right is superior between two creditors. Rather, it asks whether Congress' desire to have private enforcement of invasions of financial privacy by the government will be undermined if the very offender of the statute is let off the hook from paying attorney's fees which in effect provide the mechanism by which the enforcement is brought to bear.
 
 
 21
 Since we conclude that the district court was on sound ground in reasoning that the purpose of the Right to Financial Privacy Act would be frustrated if apportionment and setoff were allowed, we do not reach the alternative argument of Duncan that intertwining of the awards to him and his wife was so inextricably extensive as to make apportionment impossible. Courts commonly have difficult questions in cases requiring separation of interests held by husband and wife as tenants by the entireties and difficulty does not serve to excuse addressing the problem. However, we need not and do not reach the question.
 
 
 22
 AFFIRMED.
 
 WIDENER, Circuit Judge, dissenting:
 
 23
 I respectfully dissent, for, in my view, the refusal to apportion and set off the attorney's fees and costs merely promotes one public policy at the expense of another.
 
 
 24
 After recognizing that the setoff statute 31 U.S.C. Sec. 3728(a) directs the Comptroller General to "withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government," and that "[t]he status of the $50,000 military fine as a debt is undisputed on appeal," slip op. at 5, the majority refuses to carry its reasoning to its logical conclusion because "the purpose of the Right to Financial Privacy Act would be frustrated if apportionment and setoff were allowed...." Id. at 9.
 
 
 25
 Even assuming that allowing setoff in Right to Financial Privacy Act cases would frustrate the underlying purpose of the attorney's fees provision of the Act in the few cases in which both applied, I see no principled basis upon which to declare that purpose more meritorious than the purpose underlying 31 U.S.C. Sec. 3728, the setoff statute; which is nothing more nor less than an expression of government's valid interest in applying money owed its debtors toward the cancellation of valid debts owed the government. In short, I believe the public policy behind the setoff statute and the government's collection of its valid debts from those of its creditors it also owes is at least as important as the public policy of encouraging and facilitating the prosecution of claims under the Right to Financial Privacy Act.
 
 
 26
 The official charged with responsibility for administering the setoff statute, the Comptroller General, determined years before this case was filed that statutory attorney's fees are subject to the government's right of setoff, at least where, as here, the statute in issue provides only for an award of fees to the party and not to the attorney directly. See 49 Comp.Gen. 44, 47 (1969) (No. B-125183). In the absence of a specific statutory directive that attorney's fees awarded under the Right to Financial Privacy Act are not subject to the government's general right of setoff, the Comptroller General's decision is entitled to some deference. See K Mart Corp. v. Cartier, Inc., 56 U.S.L.W. 4478, 4481 (1988). Also, in view of the opinion of the Comptroller General, the attorneys knew before they ever undertook the representation of the Duncans that the Controller General would claim setoff against any sums recoverable by Duncan, including his attorney's fees. So neither they nor Duncan can legitimately claim that they did not know that the government would set off Duncan's fine against any attorney's fees recoverable by Duncan.
 
 
 27
 What the majority is concerned about, of course, is that potential plaintiffs may have difficulty securing attorneys if attorneys know that the statutory attorney's fees are subject to setoff and that a debtor of the government which is also a plaintiff in a claim against the government otherwise may be unable or unwilling to pay. That possible dilemma, however, is beyond our control. Whether any client ultimately pays his attorney is a matter that depends not only upon the client's purse, but upon his conscience. Indeed, one need look no further than the instant case to appreciate the futility of the majority's attempt to ensure the efficacy of the Act's attorney's fees provision: anyone who would defraud the Army with spurious expense reports is just as likely to forego remitting the statutory award of fees to his attorney.
 
 
 28
 Finally, I believe the attorney's fees and costs are not so inextricably intertwined as to make apportionment impossible. On the basis of the maxim that equality is equity, White v. Carolina Paperboard Corp., 564 F.2d 1073, 1087 (4th Cir.1977), I would apportion the fees and costs equally between the Duncans and set off Dale Duncan's half against the $50,000 fine.
 
 
 29
 Because I see no more compelling public policy in the Right to Financial Privacy Act than exists in the setoff statutes and the government's right to collect its debts, I respectfully dissent.
 
 
 
 [1]
 See note 2, infra
 
 
 [2]
 Section 3417(a) provides:
 (a) Any agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of--
 (1) $100 without regard to the volume of records involved;
 (2) any actual damages sustained by the customer as a result of the disclosure;
 (3) such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and
 (4) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
 
 
 [3]
 In a similar vein, the Army cites Evans v. Jeff D., 475 U.S. 717 (1986), as authority for its argument that since the attorney has no right to the fee award because the statute awards it to the plaintiff, setoff must be permitted. However, Evans, an attorney's fees case under 42 U.S.C. Sec. 1988, resolved the question of whether a plaintiff could, as part of the settlement with defendant, waive the attorney's fees otherwise authorized under the statute. There, the Supreme Court held that waiver was permissible as within the plaintiff's discretion and indicated that such contingencies could be negotiated between the attorney and the client as part of the contractual arrangement for fees. On the contrary, if we were to hold that setoff applied in the case sub judice, it would be automatically exercised and beyond the reach of a plaintiff's discretion following the entry of judgment. See also Plant, 598 F.2d at 1366
 
 
 [4]
 The district court had awarded the attorneys "$15,000 paid directly to the attorneys, 'free and clear of any and all claims which the Internal Revenue Service, the Treasury Department or the United States of America ... might have or assert against the plaintiff in this case.' " Cohen, 389 F.2d at 690