United States Court of Appeals,

Fifth Circuit.

Nos. 96-20004, 96-20147.

Richard L. MARRÉ, et al., Plaintiffs,

Agritech Enterprises, Inc., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Richard L. MARRÉ; Agritech Enterprises, Inc., Plaintiffs-Appellees,

v.

HP-84 NURSERY ASSOCIATES, INC., Intervenor-Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellant.

July 22, 1997.

Appeals from the United States District Court for the Southern District of Texas.

Before KING, GARWOOD and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellees Richard L. Marré (Marré) and Agritech Enterprises, Inc. (Agritech), Marré's wholly owned corporation, sued the United States (government) under 26 U.S.C. § 7431 of the Internal Revenue Code for wrongful disclosure of plaintiffs' tax return information. The district court awarded statutory damages and attorneys' fees to Marré but rejected Agritech's claim for damages and attorneys' fees. Plaintiffs appealed and the government cross-appealed on the amount of attorneys' fees awarded to Marré. A panel of this Court affirmed Marré's damages award but

1

reduced his attorneys' fees. The Court also reversed and remanded Agritech's claim for damages and attorneys' fees. On remand, the government and Agritech agreed on the amount of statutory damages. The district court awarded Agritech attorneys' fees in the amount of $55,500 and ordered the government not to set off the damages and attorneys' fees awarded to the plaintiffs against tax assessments made by the government against plaintiffs under 26 U.S.C. §§ 6700 and 6701. Further, the Court allowed HP-84 Nursery Associates (Nursery Associates), a judgment creditor of Marré, to intervene and held that Nursery Associates was entitled to fifty percent of Marré's damages and attorneys' fees. The government and Nursery Associates now appeal. We affirm in part and reverse in part.

### Facts and Proceedings Below

In 1981, Marré founded Agritech, a corporation organized to construct modular solar-heated greenhouse facilities on various tracts of land in Ellis and Waller counties in Texas. Marré marketed these greenhouses to limited partnerships and individual investors as tax shelters. In early 1985, the Criminal Investigation Division of the Internal Revenue Service (IRS) began a criminal investigation of the plaintiffs' greenhouse operation. The IRS believed that the plaintiffs had marketed the solar greenhouses as a tax shelter but failed to construct completed greenhouse facilities.

During the course of the investigation, Special Agent Lindell Parrish of the IRS interviewed numerous Agritech investors,

promoters, suppliers, and employees and mailed out a large number of form or "circular" letters to the Agritech investors and various suppliers. In these interviews and letters, Agent Parrish stated that Marré and Agritech were under investigation by the IRS for allegedly aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. § 7206(2), and in the view of the IRS, any tax return that showed deductions or credits in connection with the Agritech tax shelter was false and fraudulent. Attached to each letter was a questionnaire that included statements that indicated Marré had been dishonest with the investors.

Marré and Agritech filed suit against the government in the district court below under 26 U.S.C. § 7431, seeking damages for wrongful disclosures of their tax return information as defined in 26 U.S.C. § 6103(b)(2), in violation of 26 U.S.C. §§ 6103(a)(1) and 6103(k)(6). *Marré v. United States,* No. Civ. A. H-88-1103, 1992 WL 3240527 (S.D.Tex. June 22, 1992). Following a bench trial, the district court found that the IRS had made 215 unauthorized disclosures. The court determined that Marré suffered no actual damages from the disclosures and, therefore, was not entitled to an award for either compensatory or punitive damages. The court did, however, award Marré statutory damages of $1,000 per disclosure, or $215,000. The court also held that Agritech was not entitled to any damages because it had ceased doing business approximately two years before the disclosures were made; hence, the court opined, an award of damages to Agritech would amount to a double recovery for Marré. Finally, the court held that Marré, but not Agritech,

3

was entitled under 26 U.S.C. § 7430 to recover reasonable attorneys' fees of $308,444.60 and costs of $17,738.02, for a total of $326,182.62.

Marré appealed on the amount of damages and Agritech appealed the district court's rejection of its claim for damages and attorneys' fees. The government cross-appealed on the amount of attorneys' fees awarded to Marré. On appeal, we affirmed Marré's damages award, holding that the district court did not err in denying him actual damages and that, even if punitive damages were recoverable under 26 U.S.C. § 7431(c) in the absence of actual damages, the evidence did not sufficiently support an award for punitive damages. *Marré v. United States,* 38 F.3d 823, 825-28 (5th Cir.1994) (*Marré I* ). This Court also reduced Marré's attorneys' fees award to $107,500 plus costs of $17,738.02, to reflect the actual expenses incurred under his contingency fee agreement with his attorneys. With respect to Agritech, this Court concluded that nothing in section 7431 precluded the corporation from recovering damages under that provision. We vacated that part of the district court's judgment denying damages to Agritech and remanded for reconsideration of Agritech's claim for damages and attorneys' fees.[1]

On remand, the parties agreed that Agritech was entitled to

---

[1]This Court recognized that although Agritech had not actively engaged in business for two years prior to the time the disclosures were made, under Texas law Agritech was still "technically alive." We reasoned that because Agritech was a taxpayer for purposes of section 7431 at the time of the disclosures, it could still recover damages and attorneys' fees for the wrongful disclosure of its tax return information.

statutory damages under section 7431 of $111,000 for 111 separate acts of unauthorized disclosure of its tax return information. The parties disagreed, however, on whether Agritech was entitled to any attorneys' fees under section 7430. The district court determined that Agritech was entitled, "under the law of the case," to an award of $55,500 for its attorneys' fees. The court also held that the government could not set off the plaintiffs' damages and attorneys' fees awards against tax assessments the IRS had made against Marré and Agritech under sections 6700 and 6701 while appeal was pending in *Marré I*.[2] Finally, the judgment required the government to pay fifty percent of Marré's damages and attorneys' fees to Nursery Associates, a creditor that had obtained a judgment and turnover order against Marré in Texas state court and that the district court had allowed to intervene.

The government now appeals, arguing that the district court erred in awarding Agritech attorneys' fees and in prohibiting the government from setting off plaintiffs' damages and attorneys' fees against their tax liabilities. Nursery Associates appeals the district court's judgment limiting its award to only fifty percent of Marré's damages and attorneys' fees and denying its request for reasonable attorneys' fees.

**Discussion**

I. Agritech's Attorneys' Fees

---

[2]Those sections impose penalties for promoting abusive tax shelters and for aiding and abetting understatement of tax liability. The issue of whether the tax assessments made against Marré and Agritech under those sections are valid is currently being litigated in the district court.

Section 7430 of the Internal Revenue Code provides that taxpayers who prevail in tax proceedings may recover their attorneys' fees incurred in such proceeding if they establish that (1) the position of the government at the time of litigation was not substantially justified; (2) the taxpayers substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) the taxpayers meet applicable net worth requirements. 26 U.S.C. § 7430(c)(4)(A); *see also Nalle v. C.I.R.,* 55 F.3d 189, 191 (5th Cir.1995).[3] The burden of proving that the government was not substantially justified in its litigation position is with the taxpayers. *Information Resources, Inc. v. United States,* 996 F.2d 780, 786 (5th Cir.1993).

The government concedes that Marré and Agritech substantially prevailed on the most significant issues and meet the net worth requirements. The government contends, however, that the district court's award of attorneys' fees to Agritech was erroneous and should be reversed because, among other things, Agritech has failed to show that the government's position in the litigation with respect to Agritech was not "substantially justified," i.e. that it was not "justified to a degree that could satisfy a reasonable person" or had no "reasonable basis both in law and fact." *Nalle,* 55 F.3d at 191 (citations omitted). "In determining whether the

---

[3]Furthermore, the taxpayers must have exhausted all administrative remedies within the IRS. *See* 26 U.S.C. § 7430(b)(1). The government does not contend that Agritech failed to exhaust its administrative remedies.

[government's] position was not substantially justified, the question is whether the [government] acted unreasonably—that is, whether [it] knew or should have known that [its] position was invalid at the onset of the litigation." *Id.* (*citing Bouterie v. C.I.R.,* 36 F.3d 1361, 1373 (5th Cir.1994)).

We review the lower court's award of attorneys' fees under section 7430 for abuse of discretion, *see Wilkerson v. United States,* 67 F.3d 112, 119 (5th Cir.1995), and the supporting factual findings are reviewed for clear error. *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 759 (5th Cir.1996). Review of the conclusions of law underlying an award or denial of attorneys' fees is *de novo. Texas Food Indus. Ass'n v. United States Dept. of Agric.,* 81 F.3d 578, 580 (5th Cir.1996). This Court reviews the district court's ruling on substantial justification for abuse of discretion, and will reverse only if we have a definite and firm conviction that an error of judgment was committed. *Portillo v. C.I.R.,* 988 F.2d 27, 28 (5th Cir.1993).

Having reviewed the record, we conclude Agritech has failed to demonstrate that the government's position in the litigation vis-à-vis Agritech was not substantially justified, as the government did not know and had no reason to know that Agritech could recover statutory damages and attorneys' fees under section 7430. There is no evidence Agritech suffered actual damages, and we have held there was no basis for punitive damages. From the very outset of this litigation, the government's position has been that Agritech was not entitled to damages for the unauthorized

7

disclosure of its tax return information because it was, at all relevant times, essentially a defunct entity. The government vehemently argued, and the district court found, that Agritech—at all relevant times wholly owned by Marré—was not entitled to damages because it had not actively engaged in business ever since a time some two years before the complained of disclosures were made. The government reasonably relied on the fact that the Texas Secretary of State had forfeited Agritech's charter twice and the charter had remained forfeited until two months before trial.

Tellingly, even the district court in *Marré I* believed that the government's position was reasonable, as evidenced by its observation that Agritech was "dead in the water" and "little more than a corporate corpse." Although the court's agreement with the government's argument is not of itself dispositive of the issue, we believe that the court's acceptance of the government's litigation position further demonstrates the reasonableness of that position.

This is not a case where the government "unreasonably defended [its] position after several earlier courts had rejected it, when the IRS had ignored state law that clearly supported the taxpayer, [or] when the IRS had failed to conduct a reasonable investigation that would have revealed the flaw in its position." *Nalle,* 55 F.3d at 191-92 (internal footnotes omitted). Instead, the issue of Agritech's essentially defunct corporate status at all relevant times was a relatively novel one, as neither this Court nor any other federal court had addressed this precise issue until *Marré I.* Although we were not persuaded by the government's (and district

8

court's) reliance on *Shapiro v. Smith,* 652 F.Supp. 218 (S.D.Ohio 1986), which the government claimed supported its position that Agritech was not entitled to damages and attorneys' fees because it was "as good as dead," *see Marré I,* 38 F.3d at 828, our rejection of this argument was neither an express nor implied finding that the government's position was unreasonable.[4] Indeed, the government had no reason to know at the outset of litigation, either by analyzing federal and state case law or through some other reasonable investigation, that Marré's wholly owned corporation Agritech could recover damages and attorneys' fees despite having been inactive and essentially defunct ever since a time approximately two years before the challenged disclosures were made. Because Agritech has failed to demonstrate that the government's position at litigation was not substantially

---

[4]This Court concluded in *Marré I* that Agritech was "technically alive" because under Texas law, "the reinstatement of [Agritech's] charter will relate back and will revive whatever rights the corporation had at the time the suit was filed." *Marré I,* 38 F.3d at 828. Although we ultimately vacated the district court's judgment as to Agritech and remanded so that the court could determine whether Agritech was entitled to any damages and attorneys' fees and if so in what amount, we did not offer any opinion as to whether the government's litigation position with respect to Agritech was substantially justified. *See, e.g., Lennox v. C.I.R.,* 998 F.2d 244, 248 (5th Cir.1993) (explaining that "the ultimate failure of the government's legal position does not necessarily mean that it was not substantially justified").

We further note that the district court on remand did not find that the government's position was not substantially justified. Rather, the court awarded attorneys' fees to Agritech apparently without giving any consideration to the substantial justification issue, as evidenced by the court's own inconsistency—that is, agreeing with the government's litigation position during the first trial, and then awarding attorneys' fees to Agritech on remand.

justified, we hold that the court below abused its discretion by awarding Agritech attorneys' fees.[5]

II. Government's Right of Setoff

Next, the government contends that the district court erred in not allowing it (the government) to set off the plaintiffs' damages and Marré's attorneys' fees against their tax liabilities.[6] While appeal was pending in *Marré I,* the government assessed tax penalties of $2,010,733.40 against Marré (in October 1993) and Agritech (in February 1994) for promoting abusive tax shelters in violation of section 6700 and for aiding and abetting the understatement of tax liability in violation of section 6701. Marré and Agritech then filed a separate suit in district court challenging the tax assessments. Meanwhile, the court on remand held that the government could not set off the damages and attorneys' fees awarded to Marré and Agritech against their outstanding tax liabilities.

The government has both a common law and a statutory right of setoff. The government's common law right of setoff—which is inherent in the federal government—is broad and "exists independent

---

[5]Because we conclude that Agritech was not entitled to any attorneys' fees on the basis that the government's litigation position was substantially justified, we need not reach the merits of the other arguments made by the government in respect to the attorneys' fee award to Agritech.

[6]As part of its setoff argument, the government contends that it should be allowed to set off Agritech's attorneys' fees as well. However, our holding that Agritech is not entitled to recover any attorneys' fees necessarily renders moot the issue of whether Agritech's attorneys' fees are subject to the government's right of setoff.

10

of any statutory grant of authority to the executive branch." *United States v. Tafoya,* 803 F.2d 140, 141 (5th Cir.1986). "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Trust Co. of Washington, D.C.,* 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) (internal quotations omitted).

The government's statutory right of setoff is found in 31 U.S.C. § 3728, which provides:

"(a) The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.

(b) The Comptroller General shall—

(1) discharge the debt if the plaintiff agrees to the setoff and discharges a part of the judgment equal to the debt;  or

(2)(A) withhold payment of an additional amount the Comptroller General decides will cover legal costs of bringing a civil action for the debt if the plaintiff denies the debt or does not agree to the setoff;  and

(B) have a civil action brought if one has not already been brought.

(c) If the Government loses a civil action to recover a debt or recovers less than the amount the Comptroller General withholds under this section, the Comptroller General shall pay the plaintiff the balance and interest of 6 percent for the time the money is withheld."

The government's right of setoff, although broad, is not unlimited. In order for the government to invoke its right of setoff, there must be mutuality of debt between the parties. *See United States v. 717.42 Acres of Land,* 955 F.2d 376, 381 (5th Cir.1992);  *see also Capuano v. United States,* 955 F.2d 1427, 1429-

30 (11th Cir.1992) (explaining that "[t]he right of set-off is within the equitable power of a court to offset mutual debts running between two parties"). Mutuality requires "that the judgment creditor must be the same person (in the view of the law) as the party who owes the debt to be collected, and the government must be the same person to whom the debt is owed." *In re Mr. Alan I. Saltman,* Comp. Gen. B-259532, 1995 WL 905738, at \*2 (March 6, 1995) (unpublished).

## A. Setoff of Plaintiffs' Damages

With respect to the plaintiffs' damages awards in this case, the government has the authority to set off the damages against the plaintiffs' alleged tax liabilities. A mutual debt exists as between the plaintiffs and the government—that is, the government owes the plaintiffs $326,000 in total damages and the plaintiffs allegedly owe the government in excess of $2,000,000 in taxes. Because there is mutuality of debt between the plaintiffs and the government, and because we see no valid reason to disallow setoff,[7] we conclude that the district court erred in prohibiting the government from exercising its right of setoff against plaintiffs'

---

[7]Although it is possible to conjecture that the reason the district court prohibited the government from setting off the plaintiffs' tax liabilities was that the court believed the government's assessments were retaliatory in nature, the court made no such express finding of bad faith on the part of the government. In a similar vein, the plaintiffs argue that setoff should not be allowed because they are not liable for the allegedly retaliatory penalties that the government seeks to set off against the judgment. Plaintiffs claim the penalties were retaliatory in that, *inter alia,* the assessments were made after plaintiffs were "no longer under investigation." The parties are currently litigating the legitimacy of the assessments in the district court below. That issue is not properly before us.

tax debts.[8]

## B. Setoff of Marré's Attorneys' Fees

Next, we consider whether the district court erroneously prohibited the government from setting off the award to Marré's attorneys against Marré's tax liabilities. At the conclusion of the first trial, the court awarded Marré, in addition to $215,000 in damages, $308,444.60 in attorneys' fees and $17,738.02 in costs pursuant to section 7430. On appeal, we affirmed the judgment as to the amount of damages and costs, but reduced the attorneys' fees award to $107,500, to reflect the reasonable fees "paid or incurred" by Marré for the services of his attorneys, Urquhart & Hassell, under their contingency fee agreement. On remand, the district court in setting forth the plaintiffs' damages and attorneys' fees awards in a final judgment calculated Marré's attorneys' fees by adding his damages of $215,000 and attorneys' fees of $107,500, and then dividing the total in half to reflect the attorneys' fifty percent interest in the amounts recovered, or $161,250.[9] After adding the $17,738.02 in costs, the court ordered that the government pay Urquhart & Hassell a total of $178,988.02.

Section 7430 provides that "the prevailing party may be awarded a judgment or a settlement for ... reasonable litigation

---

[8]Moreover, the district court's prohibiting the government from setting off mutual debts raises serious sovereign immunity and jurisdictional concerns as well.

[9]Likewise, the court added Agritech's $111,000 in damages to its $55,500 in attorneys' fees, and dividing the total in half, calculated the attorneys' fifty percent interest to be $83,250.

costs incurred in connection with such court proceeding."[10]   26

U.S.C. § 7430.   Under the statute, if the court decides to award

attorneys' fees to the prevailing party, the fees are to be awarded

*in addition to* any damages awarded to the prevailing party.   In

other words, the attorneys' fees are not awarded out of the

prevailing party's damages, but rather are awarded on top of any

damages the prevailing party receives.   *See generally Plant v.*

---

[10]The statute reads, in relevant part, as follows:

> "(a)  In  general.—In  any  administrative  or  court
> proceeding  which  is  brought  by  or  against  the  United
> States in connection with the determination, collection,
> or refund of any tax, interest, or penalty under this
> title, the prevailing party may be awarded a judgment or
> settlement for—
>
> (1)  reasonable  administrative  costs  incurred  in
> connection with such administrative proceeding within the
> Internal Revenue Service, and
>
> (2)  reasonable  litigation  costs  incurred  in
> connection with such court proceeding....
>
> (c) Definitions.—For purposes of this section—
>
> (1)  Reasonable  litigation  costs.—The  term
> "reasonable litigation costs' includes—
>
> (A) reasonable court costs, and
>
> (B) based upon prevailing market rates for the kind
> of quality of services furnished ...
>
> (iii)  reasonable  fees  paid  or  incurred  for  the
> services of attorneys in connection with the court
> proceeding, ...
>
> (3) Attorney's fees.  For purposes of paragraphs (1) and
> (2), fees for the services of an individual (whether or
> not an attorney) who is authorized to practice before the
> Tax Court or before the Internal Revenue Service shall be
> treated as fees for the services of an attorney."  26
> U.S.C. § 7430.

14

*Blazer Financial Services, Inc. of Ga.,* 598 F.2d 1357, 1365-66 (5th Cir.1979) (disallowing setoff by creditor for violation of Truth in Lending Act where debtor was awarded attorneys' fees under statute making creditor liable for "the costs of the action together with a reasonable attorney's fee as determined by the court"); *Duncan v. United States Dept. of Army,* No. 88-2143, 1989 WL 117742, at *1 (4th Cir. Oct.4, 1989) (unpublished opinion) (disallowing setoff of attorneys' fees by Army for violation of Right to Privacy Act, 12 U.S.C. § 3401 et seq., where fees were awarded under 12 U.S.C. § 3417(a)(4), making Army responsible for "the costs of the action together with reasonable attorney's fees as determined by the court"). Thus, damages and attorneys' fees under section 7430 are separate awards, the former going to the prevailing party and the latter to the prevailing party's attorneys. In this case, because the attorneys' fees awarded under section 7430 belong to Urquhart & Hassell, and not Marré, the government cannot set off Marré's tax obligations against the attorneys' fees award, as no mutuality of debt exists between the government and Marré's attorneys.

That the statute provides that attorneys' fees are to be awarded to the prevailing party is not controlling. The issue "is not whether plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of plaintiff's debt." *Plant,* 598 F.2d at 1366. Here, as in *Plant* and *Duncan,* the prevailing party is only nominally the person who receives the award; the real party in interest vis-à-vis attorneys' fees awarded under the statute are

15

the attorneys themselves.[11]  *See, e.g., Id.* at 1366;  *Duncan,* 1989 WL 117742, at *3.

To the extent we conclude that Marré's attorneys' fees award belongs to Urquhart & Hassell—and therefore is not subject to set off—the government cannot take advantage of either *United States v. Cohen,* 389 F.2d 689 (5th Cir.1967), or *United States v. Transocean Air Lines, Inc.,* 386 F.2d 79 (5th Cir.1967), *cert. denied,* 389 U.S. 1047, 88 S.Ct. 784, 19 L.Ed.2d 839 (1968).  *Cohen* involved a prisoner who successfully sued the United States under the Federal Tort Claims Act for failure to prevent his being assaulted by a fellow inmate.  The court awarded the plaintiff $110,000, and of that amount $15,000 was awarded in attorneys' fees under 28 U.S.C. § 2678, "free and clear of any and all claims which the Internal Revenue Service, the Treasury Department or the United States of America ... might have or assert against the plaintiff in this case."  *Id.* at 690 (internal quotations omitted).  On appeal, we reversed the district court's denial of setoff, holding that under section 2678, the attorneys' rights to the fees were derivative of the plaintiff's recovery and, therefore, subject to the government's right of setoff.  *Id.* at 691-92.

In *Transocean Air Lines,* plaintiff, a bankrupt air carrier, sued the government over disputed compensation allegedly owed it for its transportation services.  The government and the trustee in

---

[11]For the same reasons, the fact that the district court awarded the attorneys' fees to Marré, and not his attorneys, does not affect our conclusion that, in this particular case, "the fee once awarded becomes in effect an asset of the attorney, not the client."  *Plant,* 598 F.2d at 1366.

16

bankruptcy settled for $75,000, to be credited against a larger claim the government held against Transocean.  Plaintiff's attorneys, who under a contingency fee agreement were to be given a one-third interest in all amounts recovered, sought to recover $25,000 for their services.  The district court granted judgment in favor of the attorneys in the amount of $25,000 directly against the government and reduced Transocean's judgment to $50,000.  In reversing the judgment, we reasoned that the attorneys' interest in the fees was derived from Florida contracts law, and because the right to sue the federal government cannot be granted by state law or through contractual relationships with third parties, the judgment could not be sustained as against the government. *Id.* at 81-82.  We also held that the attorneys' fees award could not be characterized as an assignment of Transocean's claim, as any such assignment of the judgment would be invalid under the Anti-Assignment Act, 31 U.S.C. § 203.[12]  *Id.*

Unlike the case at bar, the attorneys' fees in *Cohen* and *Transocean Air Lines* were awarded out of the plaintiffs' damages.  In *Cohen,* the attorneys' fees were awarded pursuant to a statute that then provided that the court could award reasonable attorneys' fees of up to twenty percent of the amount recovered by the plaintiff " "*to be paid out of but not in addition to* the amount of judgment ... recovered, ...' " *Cohen,* 389 F.2d at 690 n. 3 (*citing* 28 U.S.C.A. § 2678) (emphasis added).  In *Transocean Air Lines,* the

---

[12]Section 203 has since been revised.  *See* 31 U.S.C. § 3727. These revisions, however, are not relevant to our discussion.

17

fees were awarded under a contingency fee contract that provided that the attorneys would receive a one-third interest in the recovery. *See Transocean Air Lines,* 386 F.2d at 80. Because the attorneys' interest in the fees was derivative of the plaintiffs' interest in the judgment, we allowed the government to set off the attorneys' fees awarded to the plaintiffs against the judgments favorable to the plaintiffs. *See Duncan,* 1989 WL 117742, at *3 (distinguishing *Cohen* on the basis that the case involved two creditors, the government and plaintiff's attorneys, competing for rights to the plaintiff's judgment). As stated earlier, the case before us does not involve derivative rights of the attorneys to the fees; instead, the fees were awarded to Marré's attorneys in addition to the full statutory damages awarded to Marré.[13]

Our holding that the government may not set off the attorney's fees extends to, but *only* to, that portion of the fees awarded pursuant to section 7430, i.e. $107,500 in fees and $17,738.02 in costs, or $125,238.02. The government may still set off the remaining portion of the attorneys' fees which was awarded out of Marré's $215,000 in damages, or $53,750. This is so because the $53,750 falls within and comes out of the $215,000 awarded to Marré as damages, which we have held may be set off by the government

---

[13]None of the other cases cited by the government involves attorneys' fees awarded pursuant to a statute. *See United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Massachusetts Bonding & Ins. Co. v. New York,* 259 F.2d 33 (2d Cir.1958); *South Side Bank & Trust Co. v. United States,* 221 F.2d 813 (7th Cir.1955); *Malman v. United States,* 207 F.2d 897 (2d Cir.1953).

because of mutuality of debt between the government and Marré.[14]

III. Nursery Associates' Rights Under the Turnover Order

Nursery Associates, following a jury trial in Texas state court, secured a judgment against Marré individually on December 4, 1989, in the amount of $345,800 plus post-judgment interest of 10% per annum on the amount of $204,000 until paid. Through post-judgment discovery, Nursery Associates identified Marré's interest in the present case as his only significant asset. Pursuant to section 31.002 of the Texas Civil Procedure Practice and Remedies Code, Nursery Associates obtained an order for turnover relief from the state court on March 16, 1993.[15] The order

_____

[14]We note that Marré has not challenged the propriety of awarding his attorneys more than the amount we held in *Marré I* was the maximum proper award. Our disposition of the claims of the other parties renders it unnecessary to decide that matter.

[15]Section 31.002 provides, in relevant part:

"(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities....

....

(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.

(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.

19

required that Marré "and his agents, representatives, and/or attorneys turn over to HP-84 Nursery Associates any and all benefits or items of value that arise or result from [Marré's suit against the government]." In addition, Nursery Associates was awarded reasonable and necessary attorneys' fees of $1,000 along with the costs of the turnover proceeding.

On April 7, 1993, Nursery Associates filed its Notice of Interest, Motion to Intervene and Brief in Support, and Complaint In Intervention, requesting permission to intervene in Marré's federal lawsuit as a judgment creditor pursuant to the Texas state court turnover order. On April 16, 1993, the court denied the intervention. On remand to the district court from *Marré I,* Nursery Associates again sought to intervene in this case as judgment creditor. On April 21, 1995, the district court granted the Motion to Intervene and thereafter, on May 1, 1995, Nursery Associates filed its Complaint in Intervention. Nursery Associates filed a Motion to Enforce Turnover Order on November 3, 1995, asserting that it was entitled to enforcement of its judgment in the total amount of $503,198.44 ($345,800 principal plus interest).

The district court, however, did not order turnover of all of the damages and attorneys' fees awarded to Marré, which totaled $322,500. Instead, in its enforcement of the turnover order, the district court apparently relied on Marré's contingency fee agreement, which provided for a fee of 50% of all amounts

(e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees."

20

"recovered" by Marré, and awarded Nursery Associates only $161,250, to be paid by the government. The court also denied Nursery Associates's request for attorneys' fees.

On appeal, Nursery Associates argues that the district court erred in prohibiting it from receiving all of the proceeds of the judgment obtained by Marré against the government, including all damages and attorneys' fees. It claims that the court was required to look to state law in enforcing the state court turnover order and, because the language of the turnover order awards Nursery Associates any and all benefits or items of value that arise from Marré's suit against the government, the district court was required to honor the terms of the turnover order without regard to any contractual arrangement between Marré and his attorneys. Moreover, Nursery Associates complains that it was entitled to all attorneys' fees and costs incurred in enforcing its turnover order in these proceedings.[16]

## A. Nursery Associates' Interest in Marré's Damages

With respect to the $215,000 in damages awarded to Marré, we held above that the government could set off the entire amount against Marré's tax liabilities, as the government's right of setoff is superior to both Marré's interest and his attorneys' derivative interest in that award. Because Nursery Associates'

_____

[16]It is undisputed that Nursery Associates complied with Texas law in obtaining the turnover order; that the order requires Marré to turn over any and all benefits and items of value received or to be received by Marré, including any damages and attorneys' fees, from his action against the government; and that Nursery Associates was properly before the district court to enforce its turnover order.

interest in Marré's damages is also merely derivative of Marré's interest, we likewise conclude that the government's right of setoff is superior to Nursery Associates' interest in the damages. *See Cohen,* 389 F.2d at 692.[17]

Our analysis regarding Nursery Associates' interest in Marré's damages does not end here, however. With the litigation over the legitimacy of Marré's tax assessments currently pending in

---

[17]We observe that neither the government nor Nursery Associates contends that their rights vis-a-vis each other in respect to the setoff issue differ in any way from the rights of Marré and the government vis-a-vis each other in respect to the same issue. In other words, Nursery Associates does not contend that it has any greater right than has Marré to prevent the government from setting off against Marré's damage award Marré's asserted indebtedness for taxes as per the tax assessments made against Marré October 18, 1993, during the pendency of the *Marré I* appeal; and, Nursery Associates has stated its agreement with the government's contention that Nursery Associates simply stands in Marré's shoes in this respect, with rights as against the government no greater or lesser than those of Marré. In this respect, neither the government nor Nursery Associates contends that their rights as against each other are determined by the body of law governing the relative priorities of federal tax liens and the claims of state law creditors of the taxpayer. *See* 26 U.S.C. § 6321 *et seq.* We note in passing that, for purposes of this body of law, Nursery Associates' March 1993 turnover order appears not to have resulted in a choate or perfected interest in Marré's judgment against the government before the conclusion of the appeal of that judgment in our 1994 decision in *Marré I,* so that the lien of the government's October 1993 assessment was "first in time" vis-a-vis Nursery Associates' interest. *See United States v. McDermott,* 507 U.S. 447, 449-51, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993) (explaining that a state lien is perfected when "the identity of the lienor, *the property subject to the lien,* and the amount of the lien are established"); *Western National Bank v. United States,* 8 F.3d 253, 255 (5th Cir.1993) (same); *Palandjoglou v. United National Insurance Co.,* 821 F.Supp. 1179, 1186-87 (S.D.Tex.1993). *See also Commercial Credit Corp. v. U.S. Fire Ins. Co.,* 630 S.W.2d 651, 652 (Tex.App.—Houston [1st Dist.] 1981, no writ). Even if we were to assume, *arguendo,* that after our *Marré I* decision Nursery Associates was a "judgment lienor creditor" for purposes of 26 U.S.C. § 6323(a), nevertheless Nursery Associates does not contend the government had not properly filed notice of its tax lien prior to our *Marré I* decision.

the district court below, there remains the possibility that the district court could invalidate the government's tax assessments. To that end, we must also consider whether Nursery Associates' interest in the $215,000 damage award is superior to the interests of Marré and his attorneys. As between Nursery Associates and Marré, Nursery Associates' interest in the entire amount of the award is superior to Marré's interest. The turnover order's mandate that Marré turn over to Nursery Associates any and all benefits or items of value that result from the present law suit was clear and unequivocal. Hence, the district court erred in awarding Nursery Associates only half of Marré's recovery.

Likewise, as between Nursery Associates and Marré's attorneys, Nursery Associates' interest in that portion of the $215,000 in damages that was awarded to the attorneys under the contingency agreement—$161,250 less $107,500, or $53,750—is also superior to the interest of Marré's attorneys. An attorney's right to compensation pursuant to a contingency fee agreement is a property right determined under applicable state law. *Augustson v. Linea Aerea Nacional-Chile S.A.,* 76 F.3d 658, 662 (5th Cir.1996). Under Texas law, a contingency fee agreement is generally considered to be an executory contract.[18] *See Lee v. Cherry,* 812

---

[18]Marré argues that an equitable assignment of a present interest in a cause of action can occur, although not expressed, if the parties intended such an assignment. Marré claims that he and his attorneys intended an assignment of an interest in the cause of action in the November 1, 1989, amended fee agreement. The amended fee agreement letter, however, does not support Marré's argument, as the letter states only that "Urquhart & Hassell will be entitled to 50% of all amounts recovered." The letter does not state, for example, that Marré agrees to "sell," "transfer," "assign," or

23

S.W.2d 361, 363 (Tex.App.—Hous.[14th Dist.] 1991, reh'g of writ overruled); *Brenan v. LaMotte,* 441 S.W.2d 626, 630 (Tex.Civ.App.San Antonio 1969, no writ); *White v. Brookline Trust Co.,* 371 S.W.2d 597, 600 (Tex.Civ.App.Amarillo 1963, writ ref'd n.r.e.); *Carroll,* 168 S.W.2d at 240. Therefore, as a general rule, "an attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency actually occurs."[19] *In re Willis,* 143 B.R. at 431. Once the contingency occurs, the attorney has a lien on the judgment or settlement securing his services, and "an attorney's lien is paramount to the rights of the parties in the suit, and is superior to other liens on the money or property involved, subsequent in point of time." *Id.* at 432 (citations omitted).

Nursery Associates obtained its turnover order from the state court on March 16, 1993, while appeal was pending in *Marré I*—before the contingency occurred. Because the contingency fee contract

---

"convey" to his attorneys a specified interest in his claim. *See, e.g., Carroll v. Hunt,* 140 Tex. 424, 168 S.W.2d 238, 239 (Tex.Com.App.1943, opinion adopted); *In re Willis,* 143 B.R. 428, 431 n. 4 (Bankr.E.D.Tex.1992).

[19]Although it is unclear what constitutes the defining moment at which the contingency occurs, *compare Lee,* 812 S.W.2d at 363 (contingency occurs after "reduction to judgment") *with White,* 371 S.W.2d at 600 (contingency occurs after "prosecuting or defending to final judgment all suits") *and Carroll,* 168 S.W.2d at 240, 242 (contingency occurs after "successful termination of the litigation"), we believe that at minimum, the contingency cannot occur before judgment is affirmed on appeal or when the time for filing an appeal has lapsed. *See Lee,* 812 S.W.2d at 363 (explaining that "an executory contract is one that is still unperformed by *both* parties or one with respect to which something still remains to be done on *both* sides") (internal quotations omitted) (emphasis in original).

between Marré and his attorneys was still executory at the time Nursery Associates obtained its turnover order, Nursery Associates' interest in the fees is superior to the interest held by Urquhart & Hassell. Thus, Nursery Associates' interest in the entire $215,000, including the $53,750 in attorneys' fees awarded out of the damages, is superior to the interests of both Marré and his attorneys.[20]

**B. Nursery Associates' Interest in the $107,500 in Attorneys' Fees**

For the same reasons that the government cannot set off the $107,500 in attorneys' fees against Marré's tax assessments, Nursery Associates cannot claim an interest in the $107,500 of the fee award which would be superior to Urquhart & Hassell's interest. Any rights that Nursery Associates has in that portion of the attorneys' fees under the turnover order are, at most, derivative of Marré's right to the fees. Thus, because the fees were awarded to Marré's attorneys, and not Marré, and because Nursery Associates' interest stems from Marré's right to the fees, Urquhart

---

[20]Marré argues that, under the common fund doctrine, it would be inequitable to allow Nursery Associates to reap the benefits of Urquhart & Hassell's labor, as the attorneys' fees "fund" that Nursery Associates seeks to acquire through the turnover order was only made possible through Urquhart & Hassell's work in this case. The common fund doctrine, however, typically applies in situations where the attorneys sue for an interest commonly held by members of a class or third parties who benefit from the suit—which is not the situation here. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 477-81, 100 S.Ct. 745, 749-50, 62 L.Ed.2d 676 (1980); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 164-68, 59 S.Ct. 777, 779-80, 83 L.Ed. 1184 (1939). Although application of the doctrine may be appropriate in exceptional cases, we believe the case at bar does not present any exceptional or compelling reasons that would warrant invoking the doctrine. *See In re Delta Towers, Ltd.,* 924 F.2d 74, 78 (5th Cir.1991).

& Hassell's interest in the $107,500 of the attorneys' fees is superior to the interest held by Nursery Associates.[21]

## C. Nursery Associates' Reasonable Attorneys' Fees

Finally, Nursery Associates argues that it is entitled to all of its reasonable and necessary attorneys' fees incurred in having to obtain and enforce the turnover order: $1,000 in attorneys' fees for obtaining the order plus $15,000 in attorneys' fees for the intervention. Attorneys' fees are mandatory under the turnover statute if the evidence shows that the judgment creditor was successful in obtaining turnover relief and the attorneys' fees and costs are reasonable.[22] *Great Global Assurance Co. v. Keltex Properties, Inc.,* 904 S.W.2d 771, 775-76 (Tex.App.—Corpus Christi 1995, no writ); *see also Cortland Line Co. v. Israel,* 874 S.W.2d 178, 184 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (stating that "[a] court has the discretion to fix the amount of attorney's fees, but it does not have the discretion in denying them if they are proper under § 38.001"). Because Nursery Associates was successful in obtaining turnover relief and we find nothing in the record that would indicate to us that the fees are anything but

---

[21]Nursery Associates make no claim to the $17,738.02 in costs awarded to Marré's attorneys. However, even if Nursery Associates had asked for the costs, its interest would nevertheless come behind the attorneys' interest because the costs were awarded, along with the $107,500 in attorneys' fees, directly to the attorneys under the attorneys' fees statute.

[22]Tex. Civ. Prac. & Rem.Code Ann. §§ 38.001–.006 govern the award of attorneys' fees under section 31.002(e). *See Great Global Assurance Co.,* 904 S.W.2d at 775.

reasonable,[23] we conclude the district court erred in refusing to award Nursery Associates its requested attorneys' fees as against Marré.

## Conclusion

In sum, we reverse the district court's award of attorneys' fees to Agritech as well as the court's refusal to allow the government to set off Marré's and Agritech's damages of $326,000, which includes the $53,750 in attorneys' fees awarded to Marré. The setoff is allowed so that the government can withhold payment of the damages to Marré and Agritech pending final adjudication of their tax liabilities on the assessments made while the *Marré I* appeal was pending. However, we affirm the court's judgment to the extent that it prohibits the government from setting off Urquhart & Hassell's fee award of $107,500 and costs of $17,738.02, as these fees and costs belong solely to Marré's attorneys, unencumbered by the government's right of setoff.

We further hold that Nursery Associates' interest in Marré's damages award of $215,000 is likewise subject to the government's right of setoff, but is superior to both Marré's and Urquhart & Hassell's rights to the award. As for the $107,500 in attorneys' fees (and $17,738.02 expenses), Urquhart & Hassell's interest in the fees (and expenses) is superior to both the government's right of setoff and Nursery Associates' rights. Lastly, Nursery Associates is entitled to $16,000 in reasonable attorneys' fees as

---

[23]No party below or on appeal has questioned the reasonableness of the $16,000 amount requested by Nursery Associates.

against Marré.

The district court's judgment is AFFIRMED in part and REVERSED in part.