United States Court of Appeals,

Fifth Circuit.

Nos. 92-2962, 93-2291.

Richard L. MARRÉ, Plaintiff-Appellant, Cross-Appellee,

Agritech Enterprises, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee, Cross-Appellant.

Nov. 29, 1994.

Appeals from the United States District Court for the Southern District of Texas.

Before REAVLEY, DAVIS and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Richard L. Marré ("Marré") and Agritech Enterprises, Inc. ("Agritech") sued the United States under 26 U.S.C. § 7431 for wrongful disclosure of tax return information. The district court awarded statutory damages and attorney's fees to Marré. Marré and Agritech appeal the district court's damage award to Marré and its rejection of Agritech's claim. The government cross appeals the amount of attorney's fees awarded by the district court. For reasons that follow, we affirm in part, vacate in part and remand for further proceedings.

I.

In 1981, Marré founded Agritech Enterprises, Inc. ("Agritech") to build solar-heated greenhouses in Ellis and Waller Counties, Texas. The greenhouses were sold as tax shelters to limited partnerships and individual investors. Most of the limited partnerships were formed by financial planners in California, who served as general partners.

In 1985, Internal Revenue Service ("IRS") Special Agent Lindell Parrish began a criminal investigation of both Marré and Agritech for allegedly aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. § 7206(2). The IRS believed that Marré had marketed the solar greenhouses as a tax shelter, sold the investors an interest in the greenhouses, and then failed to construct complete greenhouses. The IRS took the position that the deductions taken by the owners

of the greenhouses for incomplete, nonfunctional greenhouses were fraudulent.

As part of the investigation, Parrish interviewed various Agritech investors, promoters, suppliers and employees. He also sent form letters, referred to as "circular letters," to the investors and certain suppliers. In the interviews and letters, Parrish disclosed that Marré and Agritech were under investigation by the Criminal Investigation Division of the IRS for allegedly aiding and assisting in the filing of false tax returns relative to the greenhouses. In the circular letters to the investors, Parrish also assured the investors that Marré was the sole target of the investigation and warned that any deductions taken for the greenhouses would be fraudulent. An attached questionnaire included two statements that indicated Marré had been dishonest with the investors in representing that he would furnish complete greenhouses.

Marré and Agritech sued the United States under 26 U.S.C. § 7431, seeking damages for wrongful disclosures of tax return information. Following a bench trial, the district court found that Agent Parrish had made 215 unauthorized disclosures. These include: 88 disclosures via circular letters to the investors, 23 disclosures to Agritech suppliers, 10 disclosures to promoters, and 94 "other" disclosures. Neither party challenges these findings on appeal. The court further found that Marré suffered no actual damages and that it was precluded from awarding punitive damages in the absence of a compensatory damage award. The court awarded Marré statutory damages of $1000 per disclosure, or $215,000.

The court also held that Agritech was not entitled to damages because it had ceased doing business before the disclosures were made. It concluded that an award of damages to Agritech would amount to a double recovery for Marré, Agritech's sole owner. Finally, the court held that Marré was entitled to recover reasonable litigation costs, including attorney's fees, under 26 U.S.C. § 7430. The court awarded Marré $326,182.62 in attorney's fees and costs.

Marré and Agritech appeal the district court's damage award to Marré and its rejection of Agritech's claim. The government cross-appeals the amount of attorney's fees awarded to Marré. The government also filed a motion to dismiss Marré and Agritech's appeal as premature.

II.

As an initial matter, we address the government's motion to dismiss this appeal. The government contends that the district court's judgment never ripened into an appealable order because the district court did not formally resolve the Rule 59 motions Marré and Agritech filed after the court entered judgment. After the district court entered its final judgment in this case, Marré and Agritech filed a motion to alter or amend the judgment or, in the alternative, for a new trial. The court denied the motion in a written minute entry that was entered on the docket, but did not issue a written order denying the motion.

The government contends that the lack of a separate, written order renders the appeal premature under Fed.R.Civ.P. 58. While Rule 58 clearly requires the entry of a separate, written order, courts generally distinguish between the *granting* of a post-trial motion and the *denial* of a post-trial motion. When the court grants a post-trial Rule 59 motion, it affects the judgment, and its new ruling becomes the final judgment. As such, Rule 58 requires a written order. By contrast, the denial of a post-trial motion leaves the pre-existing judgment unaffected. Thus, there is no need to issue a new judgment.

The Seventh, Ninth and Eleventh Circuits have recognized this distinction and do not require a separate, written order for the denial of a post-trial motion. *See Wright v. Preferred Research, Inc.,* 937 F.2d 1556, 1560-61 (11th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992); *Hollywood v. City of Santa Maria,* 886 F.2d 1228, 1230-31 (9th Cir.1989); *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986). We agree with this approach and deny the government's motion to dismiss.

### III.

### A.

On the merits, Marré argues first that the district court erred in not awarding him actual damages for his alleged mental suffering. Marré maintains that he presented unrefuted evidence of mental suffering and emotional anguish that resulted from the unauthorized disclosures. Marré presented evidence that Parrish's disclosures damaged his reputation, caused him emotional stress which led to his divorce, and limited his future employment opportunities.

The district court found that

> [t]he evidence of actual damages is simply not there. The demise of Agritech was pretty much a fait accompli long before Parrish began his rampage through the IRS regulations; the evidence shows that many months before the events complained of, Agritech's income had dried up and no more greenhouses were being sold; in fact, several investors had already sued Marré. Thus we cannot find that Parrish's misdeeds scuttled Marré's dreams of commercial success. Nor can we find that the collapse of Marré's marriage should be laid to Parrish's door.

We, of course, review findings of fact for clear error. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The district court did not find Marré's damage evidence sufficiently credible to support an award of actual damages. We give great deference to the trial court's credibility determinations, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511. The district court did not err in denying Marré's claim for actual damages.

## B.

Marré argues next that the district court erred in holding that it was precluded from awarding punitive damages in the absence of actual damages. Section 7431(c) of the Internal Revenue Code provides:

> (c) Damages—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—
>
> (1) the greater of—
>
> > (A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or
> >
> > (B) the sum of—
> >
> > > (i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus
> > >
> > > (ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus
>
> (2) the costs of the action.

26 U.S.C. § 7431(c).

Marré contends that the plain language of the statute permits recovery of punitive damages

in the absence of actual damages, so long as punitive damages exceed the subsection (1)(A) statutory damages. The government argues that the plain language of the statute links an award of punitive damages to a finding of actual damages, in keeping with the common law rule that punitive damages may not be awarded in the absence of actual damages. *See, e.g., 1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1291 (5th Cir.1991).

We leave undecided the statutory interpretation question because we are convinced that the evidence is not sufficient to support a punitive damage award even if recoverable. The statute authorizes a punitive damage award only if the disclosures are willful or grossly negligent. To resolve this question, our task is to determine whether the record would support a finding that Parrish made the disclosures without ground for believing that they were lawful or with a reckless disregard of Marré and Agritech's rights. *See Rodgers v. Hyatt,* 697 F.2d 899, 906 (10th Cir.1983); *Malis v. United States,* 59 A.F.T.R.2d 87-988, 1986 WL 15721 (C.D.Cal.1986). While the record supports, and the government does not dispute, the district court's findings that Marré was entitled to statutory damages, it does not reveal conduct by Agent Parrish so egregious as to warrant an award of punitive damages.

Marré contends that several of Parrish's disclosures were willful or grossly negligent. Marré points first to Parrish's disclosure in the interviews and letters that the IRS was conducting a criminal investigation of Marré and Agritech for aiding and assisting in tax fraud through marketing and promoting the greenhouses. We found no cases where such a disclosure drew a punitive damages award. *Cf. Diamond v. United States,* 944 F.2d 431 (8th Cir.1991) (holding that disclosure in circular letter that agent was a criminal agent investigating taxpayer's tax liability was a good faith, but erroneous, interpretation of § 6103); *Schachter v. United States,* 1994 WL 592556, --- F.Supp. ---- (N.D.Cal.1994) (holding that placement of "Criminal Investigation Division" at the top of a circular letter was a good faith but unauthorized disclosure). The record reflects that in an investigative interview an agent usually identifies himself, shows his pocket commission, and briefly explains the purpose of the investigation. The pocket commission includes the words "Criminal Investigation Division." Moreover, Chapter 347 of the "Handbook for Special Agents" advises

agents to put "Criminal Investigation Division" in the signature block of circular letters. Although Parrish's disclosure that he was conducting a criminal investigation for a particular crime involving a particular scheme was improper, it was not sufficiently egregious to warrant punitive damages.

Marré next complains of additional disclosures made by Parrish to the investors, which suggested that Marré was guilty of wrongdoing in advising the investors to take deductions for incomplete greenhouses. Parrish stated in the circular letters that the IRS believed that Marré had caused the investors to file false returns and that the IRS was not investigating the investors for those returns. In the questionnaire attached to the letters, Parrish also stated:

> 33. *I can assure you that the most that you have ever had during the years 1982, 1983 and 1984 could best be described as framing for a solar greenhouse. You have never had an operable solar pond. You have never had anything close to what was described in the promotion material.*
>
> 34. How do you feel about Marré remaining silent and not telling you the truth about the true condition of you [sic] invesement [sic].

In dealing with the investors, Agent Parrish faced the difficult task of securing their cooperation. Parrish needed testimony from the investors about Marré's role in persuading them to invest in the tax shelter. Because the investigation concerned Marré's role in causing the investors to claim false tax deductions, the investors were understandably reluctant to talk to Parrish for fear of implicating themselves. In fact, the IRS was actively auditing many of the investors at the time.

Parrish testified that he first attempted to interview a number of the investors in person. Many refused to take his calls, failed to show up for appointments, or brought along counsel who demanded to know more before allowing their clients to talk. In some cases, Parrish issued summons to those investors who refused to meet with him. Ultimately, Parrish decided that it would be more efficient to send circular letters to a large number of the investors.

The record does not support a finding that Parrish's disclosures were a flagrant violation of 26 U.S.C. § 6103. In conducting an investigation, an IRS agent has discretion under § 6103(k)(6) to "disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available." Parrish did not grossly abuse that discretion. Parrish made a number of attempts to contact the investors and met with little success. He thus had good

reason to believe that to gain their cooperation he must persuade them that they were not the target of the investigation and that they should assist him in developing a case against Marré, whom he believed was the most culpable party. Under these circumstances, the record does not support a punitive damage award.

## C.

Agritech, a corporation owned entirely by Marré, argues that the district court erred in denying it recovery. The district court stated that because Agritech was "dead in the water" and "little more than a corporate corpse," it refused to "allow Marré what would amount to a double recovery simply because Agritech has not yet been lowered into its grave." The court cited *Shapiro v. Smith,* 652 F.Supp. 218 (S.D.Ohio 1986) (holding that wrongful disclosure action does not survive death of individual taxpayer) for the proposition that Agritech was as good as dead and therefore not entitled to damages.

Agritech had not actively engaged in business in the two years before the disclosures at issue. Although the Texas Secretary of State forfeited Agritech's charter twice while this suit was pending, these forfeitures were set aside prior to trial after Agritech paid its delinquent franchise taxes. Under Texas law, "the reinstatement of [a corporation's] charter will relate back and will revive whatever rights the corporation had at the time the suit was filed," *M & M Constr. Co., Inc. v. Great American Ins. Co.,* 747 S.W.2d 552, 555 (Tex.App.—Corpus Christi 1988, no writ). Thus, Agritech was technically alive at the time.

Section 7431(c) provides that the United States "shall be liable" to a taxpayer upon a finding of liability. Agritech argues that as a "taxpayer" it is entitled to recover in its own right for Parrish's disclosures. The Internal Revenue Code defines "taxpayer" to include "any person subject to any internal revenue tax," 26 U.S.C. § 7701(a)(14), and further defines "person" as "an individual, a trust, estate, partnership, association, company or corporation." Id. § 7701(a)(1). Agritech was and is a taxpayer subject to payment of tax under the Internal Revenue Code. In fact, the government treated Agritech as a separate target of the criminal investigation until after this action was filed.

The government argues that Congress did not intend to allow a defunct corporation to

recover under § 7431. It contends that corporate alter-ego principles—which allow courts to disregard the corporate form and treat a corporation and its shareholders as one[1]—should bar a separate award of damages to Agritech. However, the government cites no support from the statutory language or the legislative history to support this argument.

At the outset, it is clear to us that if the government had succeeded in obtaining a conviction against Agritech, the corporation would have been primarily responsible to pay any criminal penalty. Also, it is not obvious to us that Marré will make a double recovery if Agritech is allowed to recover separate damages. It is just as reasonable to infer that the creditors of this insolvent corporation would benefit from Agritech's recovery. We vacate the court's take nothing judgment as to Agritech and remand for reconsideration of Agritech's claim for damages and attorney's fees.

D.

On cross-appeal, the government argues that the district court erred in awarding attorney's fees to Marré in an amount greater than those required under his contingency fee agreement with his attorneys. Section 7430(a) provides that "the prevailing party may be awarded a judgment ... for reasonable litigation costs incurred" in a tax case. Section 7430(c)(1)(B)(iii) includes as reimbursable costs the reasonable fees "paid or incurred" for the services of an attorney. In this case, Marré contracted to pay his attorneys 507 of any recovery plus costs. Because the court awarded Marré $215,000, the government argues that Marré "incurred" attorney's fees of only $107,500. The district court, however, awarded Marré fees of $170 per hour for 1,814.38 hours, plus costs of $17,738.02, for a total award of $326,182.62.

In a case involving similar fee-shifting provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654, the Eighth Circuit held that a party "actually incurs" only the amount owed under a contingency fee agreement. *United States v. 122.00 Acres of Land,* 856 F.2d 56, 58 (8th Cir.1988). This interpretation is consistent with other decisions under § 7430 and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See United States v. Paisley,* 957 F.2d 1161, 1164 (4th Cir.1992) (holding that party entitled to full indemnification of

---

[1]*See, e.g., Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152 (5th Cir.1987).

attorney's fees by her employer did not "incur" any expenses under EAJA); *McCormack v. United States,* 891 F.2d 24, 25 (1st Cir.1989) (rejecting pro se attorney's argument that he "paid" for his services by forgoing other opportunities on basis that taxpayer had not "paid" for services of an attorney or "incurred" any debt under § 7430); *United States v. McPherson,* 840 F.2d 244, 245 (4th Cir.1988) (same).

By contrast, the fee-shifting provision of the civil rights statute, 42 U.S.C. § 1988, allows the courts to award prevailing parties "reasonable attorney's fee as part of the costs," without any requirement that those fees be "incurred." In *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Supreme Court determined that this provision "contemplates reasonable compensation ... for the time and effort expended by the attorney," and that "a contingency-fee contract does not impose an automatic ceiling on an award of attorney's fees." *Id.* at 93-94, 109 S.Ct. at 944.

Because § 7430 limits attorney's fees to those actually incurred, Marré is entitled only to the amount owed under the contingency fee agreement plus costs, to the extent reasonable. We therefore modify the district court's judgment to reduce the award of attorney's fees to $107,500, the amount Marré owed under the contingency fee agreement, plus costs of $17,738.02, for a total award of $125,238.02.[2]

### IV.

For the foregoing reasons, we affirm the district court's statutory damages award of $215,000. We vacate the district court's take nothing judgment as to Agritech and remand for reconsideration of Agritech's claim for damages and attorney's fees. We also modify the district court's judgment to reduce its attorney's fees award on the Marré claim to the sum of $107,500.

AFFIRMED in part; MODIFIED in part; VACATED and REMANDED in part.

---

[2]Because we hold that the district court erred in awarding attorney's fees in an amount greater than that actually incurred under the contingency fee agreement, we need not reach the government's alternative arguments that the fees should be limited to the statutory rate or that the award was unreasonable.