**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2009

Charles R. Fulbruge III
Clerk

No. 07-20732

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOHN ANTHONY CLARO

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CR-126-1

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

RHESA HAWKINS BARDKSDALE, Circuit Judge:

An indictment against John Anthony Claro, a lawyer, having been dismissed in 2005, and the Government's having neither appealed that dismissal nor sought to re-indict Claro, he filed a motion for attorney's fees and litigation expenses, pursuant to the Hyde Amendment, Pub. L. 105-119, § 617, 111 Stat. 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, Note (providing that prevailing criminal defendants may recover "a reasonable attorney's fee and other litigation expenses" where the Government's position was "vexatious, frivolous, or in bad faith").  The motion was granted in part and denied in part. Claro appeals two of the denied fees requests.

At issue are whether the Hyde Amendment allows the recovery of attorney's fees: for Claro's contingent-fee contract with an attorney to pursue Claro's claims under the Hyde Amendment; and for uncompensated paralegal services provided by Claro's wife for defending against the criminal charges against Claro. AFFIRMED IN PART; VACATED IN PART; and REMANDED.

## I.

This matter arises from a criminal proceeding in the Southern District of Texas against Claro—a lawyer—and seven others. In 2004, they were indicted for conspiracy, mail fraud, monetary transactions with criminally derived property, and money laundering. Defendants were charged with defrauding millions of dollars of premium payments from employee health-care benefit programs.

In July 2005, the district court dismissed the indictment against Claro without prejudice. The Government neither appealed that dismissal nor sought a new indictment.

That September, under the Hyde Amendment, Claro moved to recover his attorney's fees and expenses, both for defense of the underlying criminal charges and for pursuing the Hyde Amendment claim. A hearing on the motion was held in April 2006, during which the district court admonished the Government for filing an "incomprehensible" indictment and subsequent bill of particulars, and for acting with "reckless disregard for the truth or falsity of the charge". It entered an order that: (1) the Government would pay Claro's attorney's fees and expenses; and (2) along that line, Claro was to submit a one-page calculation of his requested fees and expenses, to be followed by the Government's submitting a one-page "calculation of its position on Claro's calculations".

Claro submitted the following. For fees and expenses incurred in defending against the criminal charges, he requested: (1) $329,106.29 for the law firm of Hartzog Conger Cason & Neville (the Neville firm); (2) $1,686.42 for the law firm of Cruse Scott Henderson; and (3) $292,910.53 for Claro and his wife. For fees and expenses for pursuing the Hyde Amendment claim, he requested: (1) $249,481.29 for the law firm of DeGuerin Dickson & Hennessey (a 40 percent contingent fee based on the total above-described requested fees and expenses); (2) $2,000 for pending legal expenses; and (3) $3,500 for estimated fees and expenses (for the scheduled 9 May 2006 hearing on the submitted requests).

The Government's memorandum in opposition contended: (1) the attorney's fees awarded to Claro should be limited to the criminal prosecution, and they should be further limited to the statutory cap of $125 an hour (plus a cost-of-living adjustment) because there were no "special factors" meriting an upward adjustment from that cap; (2) the fees requested for the work by Claro and his wife were not "incurred" by Claro, as required by the Hyde Amendment, and accordingly not reimbursable; and (3) because no provision in the Hyde Amendment permits a contingent-fee award, Claro's request based on his contingent-fee contract had no legal basis.

At the 9 May 2006 hearing on Claro's claim, several involved in the proceedings for each side testified regarding the requested fees and expenses. The district court's 31 July 2007 opinion granted in part, and denied in part, Claro's claim.

It awarded: (1) $332,606.29 for the Neville firm, for defending against the criminal charges; (2) $28,000 for that same firm for pursuing the Hyde Amendment claim (as discussed *infra*, it had *not* done so); and (3) $1,686.42 for

Cruse Scott Henderson, for defending against the criminal charges. Finding it unreasonable, the court denied the contingent fee for $249,481.29 for the DeGuerin firm's work on the Hyde Amendment claim, for the reasons discussed *infra*. Finally, of the $292,910.53 requested by Claro for his and his wife's work, the district court: (1) granted $29,000 for Claro's direct expenses, for items such as copying, filing, air fare for the Neville firm's attorneys, and transcripts; and (2) denied the $75,250 requested for Claro's work and the $183,750 requested for his wife's paralegal work, ruling their work did not constitute "incurred" fees as described by the statute.

In total, through a 31 July 2007 Order on Defense Fees and Expenses, the district court awarded $391,292.29 to Claro for attorney's fees and expenses. That amount has been paid. (The Government voluntarily dismissed its appeal.)

II.

Claro does *not* contest the denial of his claim for his work in defending against the criminal charges. He does challenge the other two denials.

At issue are: (1) whether Claro can recover attorney's fees for the DeGuerin firm's pursuing, under its contingent-fee contract, the Hyde Amendment claim (as discussed *infra*, the $28,000 awarded for the Neville firm was in error; it did not pursue the claim); and (2) whether Claro can recover for his wife's paralegal work for the underlying criminal proceedings. Again, the balance of the award of approximately $391,000 is not disputed.

An award or denial of attorney's fees and expenses under the Hyde Amendment is reviewed for abuse of discretion. *E.g.*, *United States v. Truesdale*, 211 F.3d 898, 905 (5th Cir. 2000). Legal determinations underlying the award are, of course, reviewed *de novo*. *Id.* at 906.

4

The Hyde Amendment was enacted by Congress in 1997 to allow wrongfully prosecuted criminal defendants "a means to sanction the Government for prosecutorial misconduct". *United States v. Hristov*, 396 F.3d 1044, 1046 (9th Cir. 2005) (internal quotation marks and citation omitted). The Amendment authorizes the district court to award a prevailing party "a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances makes such an award unjust". 18 U.S.C. § 3006A, Note.

A motion under the Hyde Amendment implicates interests identical to those implicated by one under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412: "In each case, the movant is seeking an award of attorney's fees [and expenses] based upon a litigating strategy employed by the government that, the movant claims, conflicts with certain statutorily defined notions of fair play." *Truesdale*, 211 F.3d at 904. Accordingly, in enacting the Hyde Amendment, Congress directed that the procedures and limitations of the EAJA are, with limited exceptions, incorporated into the Hyde Amendment. *Id.* at 903. In this regard, 18 U.S.C. § 3006A, Note provides: "Such awards [made pursuant to the Hyde Amendment] shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 [of the EAJA]."

Section 2412 of the EAJA, however, contains two provisions relating to attorney's fees: subparts (b) and (d). Subpart (b) provides, *inter alia*, that a district court "may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States". 28

U.S.C. § 2412(b). Subpart (d) contains the "procedures and limitations" for an award under the Act. 28 U.S.C. § 2412(d). For the two issues at hand, we join our sister circuits that have held the "procedures and limitations" incorporated by the Hyde Amendment are those in subpart (d). *See United States v. Aisenberg*, 358 F.3d 1327, 1339-42 (11th Cir. 2004); *United States v. Knott*, 256 F.3d 20, 26-27 (1st Cir. 2001); *United States v. Sherburne*, 249 F.3d 1121*,* 1129 (9th Cir. 2001); *United States v. Ranger Elec. Commc'ns, Inc.*, 210 F.3d 627, 633 (6th Cir. 2000), *overruled on other grounds by Scarborough v. Principi*, 541 U.S. 401 (2004).

Section 2412(d) states, in pertinent part: "[A] court shall award to a prevailing party . . . fees and other expenses . . . *incurred* by that party . . . unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust". 28 U.S.C. § 2412(d)(1)(A) (emphasis added). "Fees and other expenses" include "reasonable attorney fees . . . based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee". 28 U.S.C. § 2412(d)(2)(A). To support an award, the prevailing party is required, *inter alia*, to "submit to the court an application for fees and other expenses . . . [showing] the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed". 28 U.S.C. § 2412(d)(1)(B).

A.

The requested $249,481.29 for the DeGuerin firm's pursuing the Hyde Amendment claim was based on Claro's contingent-fee agreement with that firm: it was to receive a 40 percent contingent fee "on any Hyde petition award". In other words, that firm was to recover 40 percent of the award for work done in the underlying criminal proceedings.

The district court ruled this request was unreasonable. In doing so, the court added: "DeGuerin did no work. DeGuerin was unable at hearings to answer simple questions about the case. Claro and Neville's firm did, aided by an exceptional paralegal." The court concluded that a reasonable amount for pursuing the Hyde claim "[u]nder the base fee and the factors" was $28,000. Instead of awarding the $28,000 for work done by the DeGuerin firm, however, the court awarded it to the Neville firm, Claro's criminal-defense attorneys. (It, however, did not do such work. On the other hand, as discussed, Claro was awarded approximately $333,000 for that firm's work in the underlying criminal proceedings.)

It is unclear from the district court's opinion whether its ruling was based on the conclusion that contingent-fee based awards pursuant to the Hyde Amendment are unreasonable *per se*, or whether the request was denied based on the court's conclusion that "DeGuerin did no work". It is also unclear whether "DeGuerin" references an attorney or the law firm of which he is a member. In any event, because whether contingent-fee based awards are proper under the Hyde Amendment is a question of law, reviewed *de novo*, *see Truesdale*, 211 F.3d at 906, and, because it is not disputed that the Hyde claim was pursued by the DeGuerin firm, the meaning of "DeGuerin" in the district court's opinion is

7

immaterial to our legal analysis. (Also immaterial to our analysis is the statement in Claro's brief on appeal that he seeks a reduced contingent fee of $100,000, plus $1,049.64 in expenses, because the DeGuerin firm was relieved of its obligation to represent Claro on appeal, and, as a result, the contingent-fee contract was modified.)

Claro claims fees based on a contingent-fee contract are recoverable under the Amendment because such fees are recoverable under the EAJA and because this circuit has held contingent fees are recoverable under similar fee-shifting statutes.

The Government counters that Claro did not carry his burden of proof to establish that the fees at issue were "incurred" because he failed to present any itemized billing records from the DeGuerin firm. Further, Claro failed to attach such records to his motion for reconsideration. Therefore, according to the Government, Claro not only failed to establish the DeGuerin firm's fees were "reasonable", but also forfeited any claim for reasonable fees.

In addition, the Government contends the authorities cited by Claro are inapposite because they only stand for the proposition that contingent-fee agreements impose a ceiling on attorney's-fees awards; they do not remove the district court's authority to decide whether requested fees are reasonable. Further, because the Hyde Amendment waives sovereign immunity, and because it does not expressly authorize contingent-fee based awards, the Government maintains such fees are not authorized.

In the alternative, the Government claims we need not consider the issue because: the district court did not abuse its discretion in concluding $28,000 was a reasonable fee for pursuing the Hyde claim; that amount was awarded and

paid to Claro; and it is for Claro to decide who is entitled to it. (Along that line, Claro and the Government agree the district court erroneously awarded $28,000 for the Neville firm's work on the Hyde claim, because it did not work on it.)

1.

Our analysis is governed by the well-established principle that waivers of sovereign immunity, such as through the Hyde Amendment, are strictly construed in favor of the sovereign. *E.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). Both the Hyde Amendment and the EAJA are silent on the issue of contingent-fee based awards. Although the EAJA requires that the fees be "incurred", *see* 28 U.S.C. § 2412(d)(1)(A), there is no such express requirement in the Hyde Amendment. *See* 18 U.S.C. § 3006A, Note ("the court . . . may award to a prevailing party . . . a reasonable attorney's fee and other litigation expenses"). As discussed, however, the EAJA's requirement that the fees be "incurred" is incorporated into the Hyde Amendment.

In *TGS International, Inc. v. United States*, 983 F.2d 229 (Fed. Cir. 1993), TGS, a government contractor, prevailed against the Government on the issue of liability, based on its delay in accepting and activating an electrical substation. *Id.* at 229. The Government appealed, but the Federal Circuit remanded to the Armed Services Board of Contract Appeals only for determination of the amount of recovery by TGS. *Id.* (citing *TGS Int'l, Ltd. v. United States*, 949 F.2d 402 (Fed. Cir. 1991)). While the matter was pending before the Board, TGS moved, under EAJA § 2412(d), for attorney's fees with respect to the appeal. *Id.* at 230. The fees amount was based on "attorney time

actually expended". *Id*. TGS' contract with its attorney, however, called for an initial retainer plus "a contingent fee to be based upon actual recovery". *Id*.

The Federal Circuit held that, pursuant to the EAJA, TGS was entitled to an award based on the contingent-fee contract, rather than its requested award based on the work by the attorney, because "the nature of the arrangement between TGS and its counsel was such that the fees *actually incurred* by TGS would not be known until after determination of quantum on remand". *Id*. (emphasis added). The import of *TGS International*, therefore, is that contingent-fee contracts may be an appropriate measure of fees recoverable under § 2412(d).

Turning to this circuit's decisions, in *Estate of Lee v. FEMA*, 812 F.2d 253, 255 (5th Cir. 1987), plaintiff prevailed in an action against FEMA for the recovery of insurance proceeds under a National Flood Insurance Program policy. *Id*. After a bench trial, the plaintiff was awarded over $188,000 in actual damages. *Id*. Having found the position of the United States not "substantially justified", the district court also ordered FEMA to pay attorney's fees under the EAJA in the amount of one-third of plaintiff's recovery, based on plaintiff's contingent-fee contract. *Id*. at 256-57. The awarded amount exceeded what plaintiff would otherwise have recovered under the EAJA based on the hours worked by the attorneys. *Id*. at 257.

Reasoning that the then statutory hourly cap of $75 was "a statutory ceiling and not a floor", and noting the district court's failure to discuss "any exceptional circumstances upon which it based the award", our court held no "special factors exist[ed] to justify an award exceeding the statutory maximum rate". *Id*. It further stated: "The fact that [plaintiff] had contracted, of its own

10

volition, to a contingency fee arrangement with its attorneys, is not a sufficient reason for deviating from the legal standard set by statute." *Id.* (citing with approval *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989), for the proposition that "the court should not rely on the parties' contingency fee arrangement in determining a reasonable attorney fee award").

In *Marre v. United States*, 38 F.3d 823 (5th Cir. 1994), however, our court modified a district court's attorney's-fees award based on an hourly rate to reflect a contingent-fee agreement. *Id.* at 828-29. *Marre* involved an action against the Government, pursuant to 26 U.S.C. § 7431, for wrongful disclosure of tax-return information. *Id.* at 825. The district court awarded plaintiff $215,000 in statutory damages. *Id.* (Only statutory damages were awarded because the district court found the plaintiff suffered no actual damages. *Id.*) The district court also awarded $326,182.62 in litigation costs and attorney's fees pursuant to 26 U.S.C. § 7430 (providing for reasonable litigation costs). *Id.* The fees were based on a reasonable hourly rate of $170 times the number of hours worked. *Id.* The Government challenged, *inter alia*, the litigation-costs and attorney's-fee award, claiming that, pursuant to the 50 percent contingent-fee contract with his counsel, plaintiff incurred attorney's fees in an amount equal to only one half of the statutory damages. *Id.* at 828.

The statute at issue in *Marre* provided that "the prevailing party may be awarded a judgment . . . for reasonable litigation costs incurred". *Id.* (citing 26 U.S.C. §§ 7430(a), (c) (defining "reasonable litigation costs" to include, *inter alia*, "reasonable fees paid or incurred for the services of attorneys . . . [not to exceed] $125 per hour" unless special factors justify a higher rate). Relying on decisions

11

interpreting similar fee-shifting statutes, our court held: "Because § 7430 limits attorney's fees to those *actually incurred*, [plaintiff] is entitled only to the amount owed under the contingency-fee agreement plus costs, *to the extent reasonable*." *Id.* at 828-29 (citing with approval *United States v. 122.00 Acres of Land*, 856 F.2d 56, 58 (8th Cir. 1988), and stating that "the Eighth Circuit held that a party 'actually incurs' only the amount owed under a contingency fee agreement") (emphasis added); *United States v. Paisley*, 957 F.2d 1161, 1164 (4th Cir. 1992) (attorney's fees not incurred under EAJA where plaintiff entitled to full indemnification by employer); *McCormack v. United States*, 891 F.2d 24, 25 (1st Cir. 1989) (attorney's fees not incurred under § 7430 by a *pro se* party). Accordingly, the award, based on the contingent-fee contract, was reduced to one-half of the awarded statutory damages. *Id.* at 829.

In this regard, *Marre* distinguished *Blanchard*, 489 U.S. at 87, because the fee-shifting statute in *Blanchard* did not require that the fee be incurred. *Marre*, 38 F.3d at 829. In *Blanchard*, the Supreme Court confronted the issue whether a fee awarded under 42 U.S.C. § 1988, allowing courts to award prevailing parties "reasonable attorney's fees as part of the costs", was limited by a contingent-fee contract. *Blanchard*, 489 U.S. at 88. There, through 42 U.S.C. § 1983, plaintiff pursued a civil-rights action in district court. *Id.* at 89. The jury awarded $5,000 in actual, and $5,000 in punitive, damages. *Id.* Plaintiff requested over $40,000 in attorney's fees and expenses under § 1988. *Id.* After reviewing the billing and costs records, however, the district court awarded $7,500 in fees, and less than $1,000 in expenses. *Id.* Plaintiff on appeal sought an increase of this award; our court, however, further reduced the fees award to $4,000, holding the 40 percent contingent-fee contract served as

a cap on the amount of fees to be awarded in the light of *Johnson*, 488 F.2d at 718 (listing 12 factors for determining fee awards in Title VII actions). *Blanchard*, 489 U.S. at 90.

The Supreme Court reversed, holding a prevailing party's fee arrangement with its attorney, "standing alone, is not dispositive". *Id*. at 93. The Court reasoned that, to hold otherwise, would be inconsistent with § 1988's policy and purpose of vindicating important constitutional rights and ensuring that "competent counsel was available to civil rights plaintiffs". *Id*. The Court stated, *inter alia*:

> Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel. Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision. And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee. All of this is consistent with and reflects our decisions in cases involving court-awarded attorney's fees.

*Id*. at 94. Regarding contingent-fee contracts in the context of civil-rights litigation, the Court explained:

> If a contingent-fee agreement were to govern as a strict limitation on the award of attorney's fees, an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all possible avenues of relief. Section 1988 makes no distinction between actions

for damages and suits for equitable relief. Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.

*Id.* at 95-96. Accordingly, because the "contingent-fee model, premised on the award to an attorney of an amount representing a percentage of the damages, is . . . inappropriate for the determination of fees under § 1988", the Court held the contingent-fee contract was "not a ceiling upon the fees recoverable under § 1988". *Id.* at 96.

In contrast, the Eleventh Circuit in *United States v. Adkinson*, 360 F.3d 1257, 1259 (11th Cir. 2004), held a district court did not abuse its discretion in awarding a $50,000 flat fee under the Hyde Amendment. That fee, agreed upon by defendant and his attorney, turned out to be substantially lower than the § 2412(d)(2)(A) fee cap. *Id.*

Although the district court in *Adkinson* found that, based on an hourly rate, the fee award would have exceeded $191,000, the district court held: because § 2412(d) "requires the fees to be actually incurred to be reimbursable, the fee agreement cap[ped] an EAJA award . . . and thus a Hyde Amendment award". *United States v. Adkinson*, 256 F. Supp. 2d 1297, 1317 (N.D. Fla. 2003) (relying on, *inter alia*, *Marre*, 38 F.3d at 829, and distinguishing *Blanchard*, 489 U.S. at 93, based on the lack of the "incurred" requirement in § 1988). The *Adkinson* district court further distinguished between the purposes underlying § 1988 and the Hyde Amendment:

> The purpose of § 1988 "was to make sure that competent counsel was available to civil rights plaintiffs." *Blanchard*, 489 U.S. at 93. The purpose of the Hyde Amendment is to punish the federal government for bad-faith prosecutions by forcing the government to compensate *the defendant* for attorneys' fees and expenses *incurred*

14

as a result of the prosecution. Ensuring the availability of competent criminal defense counsel is not a purpose of the Hyde Amendment. A Hyde Amendment award comes directly from the United States treasury and is thus clearly distinguishable from . . . the civil rights claim in *Blanchard*, where the award was paid by a local government who lacked sovereign immunity or Eleventh Amendment immunity. Awarding a Hyde Amendment claimant fees in excess of the fee agreement would amount to awarding a windfall at public expense, an intolerable result considering the rule that waivers of sovereign immunity are to be narrowly construed. The Hyde Amendment's joint purposes of punishing the government and compensating the defendant can be achieved by awarding the full amount of the fee contract.

*Id.* at 1317 (footnote calls omitted, emphasis in original).

The above-cited authorities and the principle that waivers of sovereign immunity should be narrowly construed compel our holding that, because the Hyde Amendment incorporates the "incurred" requirement from the EAJA, amounts awarded under the Hyde Amendment are capped at the rates provided for in contingent-fee contracts, unless, as discussed *infra*, a court determines a contingent-fee amount is unreasonable. *See, e.g., Marre*, 38 F.3d 828-29 (amount of "incurred" attorney's fees under 26 U.S.C. § 7430 equal to the amount owed under 50 percent contingent-fee agreement); *TGS Int'l*, 983 F.2d at 230 (amount of "incurred" attorney's fees to be awarded under § 2412(d)(1)(A) contingent upon amount of recovery on the merits); *Adkinson*, 256 F. Supp. 2d at 1317 (attorney's fees to be awarded under Hyde Amendment capped at contingent-fee rates), *aff'd*, 360 F.3d at 1259; *see also Johnson*, 488 F.2d at 718 (noting that, although parties' fee contracts with their attorneys "should not determine the court's decision" in calculating the amount of attorney's fees, "[i]n no event, . . . should the litigant be awarded a fee greater than he is contractually bound to

15

pay"), *abrogated by Blanchard*, 489 U.S. at 93 (holding that, because there is no requirement in § 1988 that attorney's fees be incurred, contingent-fee agreements do not impose an automatic ceiling on the fees amount).

Accordingly, *Blanchard*, decided in the context of § 1988, is distinguishable. In addition to the "incurred" requirement not being in § 1988, the policy considerations underlying § 1988 and discussed in *Blanchard* are not present in Hyde Amendment proceedings. The purpose of the Hyde Amendment is not to encourage criminal litigation or ensure the availability of a criminal defense counsel, but to compensate criminal defendants for the amounts expended on their defense, to the extent reasonable, as well as to punish the Government for vexatious, frivolous, or bad-faith prosecutions. In this regard, the district court's reasoning in *Adkinson* is persuasive.

Along those lines, because of *Estate of Lee*'s refusal to award attorney's fees under the parties' contingent-fee arrangement in excess of the EAJA's statutory cap, *Estate of Lee*, 812 F.2d at 257, is consistent with our holding that, although parties may not recover in excess of the amount provided for in a contingent-fee contract, that amount alone does not limit the court's discretion in calculating reasonable fees awards.

Therefore, contrary to Claro's contention, the requested award, based on a contingent-fee contract, for pursuing the Hyde Amendment claim is not imperative. Both the Hyde Amendment and the EAJA require attorney's-fees awards to be *reasonable*. Accordingly, although contingent-fee agreements are allowed under the Hyde Amendment and provide a cap above which plaintiffs cannot recover, the district court nonetheless retains discretion to reduce that amount to one that is reasonable.

We similarly find unavailing Claro's public-policy claim that "the only viable option" to retain counsel to pursue a Hyde Amendment claim, after a criminal defendant has been drained of his financial resources having had to defend against a criminal charge, is to engage an attorney on a contingent-fee basis. "[F]ee awards, properly calculated, by definition will represent the reasonable worth of the services rendered" in pursuing the plaintiff's Hyde claim. *Blanchard*, 489 U.S. at 96. To repeat, the reasonableness of the fee–contingent or not–is for the court to decide.

2.

As discussed, the Government concedes that only the DeGuerin firm worked on the Hyde claim. Nevertheless, it contends any claim for attorney's fees Claro might have for that firm's work has been forfeited because Claro failed to present itemized time and expense records from that firm. In that regard, the record contains an affidavit submitted by one of the lawyers from the DeGuerin firm. That lawyer worked on pursuing the Hyde claim.

This affidavit states, *inter alia*, that the DeGuerin firm was to receive a 40 percent contingent fee and that such fee represented "necessary and reasonable costs based on time spent and special factors, such as the qualifications and skills of the attorneys, and whether the attorney practices in a specialized area of law". In addition, the record reflects, of course, the court filings and appearances, and other work done by that firm in representing Claro on his Hyde Amendment claim. Therefore, based on this record, and because the DeGuerin firm submitted a basis for fees under its contingent-fee agreement with Claro, there was no forfeiture.

On the other hand, as expressly required by the EAJA, incorporated by the Hyde Amendment, detailed itemized statements must be submitted in support of a Hyde Amendment claim. 28 U.S.C. § 2412(d)(1)(B) (such itemized statements must state "the actual time expended and the rate at which fees and other expenses were computed").

Arguably, the DeGuerin firm's failure to follow this express and necessary requirement for determining a "reasonable" fee is fatal to the claim presented here. It is not in this instance, however, for the reasons stated above, including the uncertainty of the law prior to this appeal on an award based on a contingent-fee contract. In the future, such detailed records must be submitted.

Accordingly, on remand, such records must be constructed based on documented work and affidavits. Obviously, the records' not having been prepared contemporaneously with the claimed work will be a factor to be considered by the district court in deciding on an award, if any.

Therefore, because our holding clarifies the scope of the Hyde Amendment for this contingent-fee issue, this matter is remanded for the district court to determine the fees to be awarded the DeGuerin firm, "unless the court finds that special circumstances make such an award unjust". 18 U.S.C. § 3006A, Note. The $28,000 previously awarded in error for the Neville firm need not be vacated, because it was awarded to Claro and was part of the amount paid by the Government to him. As a result, it was for Claro to determine which attorneys were entitled to it. On the other hand, any amount awarded, in accordance with this opinion, for the work done by the DeGuerin firm is to be offset by the $28,000 already paid by the Government.

B.

Claro contends that his wife's paralegal work for his criminal proceedings should be fully compensable under the Hyde Amendment. After Claro's indictment, Mrs. Claro, a court reporter for over 30 years who owned a court-reporting business, significantly reduced her court-reporting workload in order to assist her husband's defense. She provided over 2,450 hours of paralegal services for the Neville firm during the proceedings. As noted *supra*, Claro claims this work is compensable in the amount of $183,750: $75 per hour for 2,450 hours worked.

The correctness of the amount requested is not challenged by the Government. Rather, at issue is whether any such fees are compensable under the Hyde Amendment.

As a helpful starting point, the Supreme Court recently held paralegal fees are reimbursable under the EAJA. *See Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2012 (2008). It further held they would be recoverable at the litigant's "reasonable cost", which it deemed to be the "prevailing market rate" when such rates could be determined. *Id.* at 2013. While *Richlin* confined its discussion to 28 U.S.C. § 504 (a section of the EAJA relating to attorney's fees in connection with proceedings before an administrative agency), it assumed, without deciding, that its reasoning would extend to EAJA § 2412 as well. *Id.* at 2012 n.3. Accordingly, because the "procedures and limitations" of the EAJA with regard to attorney's fees are incorporated into the Hyde Amendment, we hold that paralegal fees are reimbursable under the Hyde Amendment as well.

Claro contends he should be awarded fees for his wife's paralegal work because the fees were "incurred" pursuant to 28 U.S.C. § 2412(d)(1)(A). As

discussed more fully *infra*, he claims it was not necessary for him to have a legal obligation to pay his wife for her work in order for the fees to be "incurred"; rather, her work was reimbursable because, without it, the burden of attorney's fees would have become a deterrent to litigation and, accordingly, the objective of the Hyde Amendment would have been defeated. The Government counters: Mrs. Claro was not a paralegal by trade; she did not contract with Claro to provide paralegal services; she submitted no billing statements to Claro or his attorneys; and, therefore, as Mrs. Claro did not bill for her services, nor did Claro pay for her services, no fees were "incurred" under § 2412(d)(1)(A).

The district court denied such fees for Mrs. Claro's work, citing *Kay v. Ehrler*, 499 U.S. 432, 436-37 (1991), in holding her work was non-compensable because she was a "direct, interested party". *Ehrler* held a *pro se* litigant, who is also a lawyer, may not recover attorney's fees under 42 U.S.C. § 1988(b) (awarding reasonable attorney's fees in actions involving civil-rights violations), because Congress' interest in ensuring effective prosecution of civil rights claims was "better served by a rule that creates an incentive to retain counsel in every such case". *Id.* at 437-38.

As urged by Claro, the circumstances with regard to his wife do not present the policy concerns expressed in *Ehrler*. Claro was represented by counsel, and the assistance of his wife did not "deprive[] [him] of the judgment of an independent third party in framing the theory of the case". *Id.* at 437. We hold, nonetheless, that Claro is not entitled to fees for his wife's work because, unlike, for example, the work done by the law firms in defending against the criminal charges, the work done by Mrs. Claro did not represent "incurred" costs under § 2412(d); and, there are no exceptional circumstances that would allow

20

an award of such fees, notwithstanding Claro's having no legal obligation to pay for his wife's work.

As noted *supra*, the EAJA (and, by incorporation, the Hyde Amendment) allows the recovery of attorney's fees "incurred" by the prevailing party in the litigation. 28 U.S.C. § 2412(d)(1)(A). Neither the EAJA, however, nor its legislative history, defines "incurred". Webster's Dictionary defines "incur" as "to become liable or subject to", or to "bring down upon oneself". WEBSTER'S DICTIONARY 632 (11th ed. 2003). Black's Law Dictionary states it means "to suffer or bring on oneself (a liability or expense)". BLACK'S LAW DICTIONARY 836 (9th ed. 2009).

This appears to be the general rule: fees are "incurred" when the litigant has a legal obligation to pay them. *See SEC v. Comserv Corp.*, 908 F.2d 1407, 1414-15 (8th Cir. 1990) (holding, under the EAJA, a litigant did not "incur" fees when his former employer agreed to pay his legal fees and expenses); *Paisley*, 957 F.2d at 1164 (holding, under the EAJA, a prevailing party with an unconditional right to be indemnified for his legal expenses by a solvent third party had not "incurred" attorney's fees); *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (holding "incurred", within the meaning of the EAJA, requires an express or implied agreement that the fee award will be paid over to a legal representative).

Under this framework, Claro would not be entitled to an award for his wife's paralegal work. She did *not* contract with Claro to provide paralegal services, nor did she bill him for her time spent working on his criminal proceeding. On the other hand, the amounts requested for the work of three paralegals who were employed by the law firms in the criminal proceeding

representing Claro–two at the Neville firm and one assisting local counsel in Houston–were included in the attorney's fees awarded Claro. This appropriately reflects the Supreme Court's decision in *Richlin*, as Claro had a legal obligation to pay his attorneys; and, as *Richlin* held, a firm's paralegal services may be included in the definition of "fees" for purposes of attorney's-fees awards. *Richlin*, 128 S. Ct. at 2012. Conversely, regardless of whether Mrs. Claro expected to be paid, Claro had no *legal obligation* to pay her, unlike his obligation to his retained counsel.

Many courts, however, have recognized exceptional situations for which an award of attorney's fees is *not* contingent upon an obligation to pay counsel. More specifically, courts have awarded attorney's fees under the EAJA, and other similar fee-shifting statutes requiring fees be "incurred", when the prevailing party is represented *pro bono* or by a legal-services organization.

In *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir. 1984), the court ruled that the EAJA's legislative history supported the conclusion that awards in *pro bono* matters were contemplated by Congress. That history stated: "[T]he computation of attorney fees should be based on prevailing market rates *without reference to the fee arrangements between the attorney and client*". *Id.* at 986 (quoting H.R. Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4994) (emphasis in original).

The court coupled this legislative history with a strong policy justification for extending EAJA fee awards to *pro bono* organizations, by noting that permitting fees for *pro bono* counsel under the EAJA "insure[s] that legal services groups, and other *pro bono* counsel, have a strong incentive to represent indigent . . . claimants". *Id.* (quotation marks and citation omitted). "If

attorneys' fees to *pro bono* organizations are not allowed in litigation against the federal government, it would . . . discourage involvement by these organizations in such cases, effectively reducing access to the judiciary for indigent individuals. Such a result surely does not further the goals of the EAJA". *Id.* at 986-87; *see also Watford v. Heckler*, 765 F.2d 1562, 1567 n.6 (11th Cir. 1985) (holding that "in light of the [EAJA's] legislative history and for reasons of public policy, plaintiffs who are represented without charge are not generally precluded from an award of attorney's fees under the EAJA"); *Ed A. Wilson Inc., v. Gen. Servs. Admin.*, 126 F.3d 1406, 1409 (Fed. Cir. 1997) ("It is well-settled that an award of attorney fees [under the EAJA] is not necessarily contingent upon an obligation to pay counsel. . . . The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards." (quotation marks and citation omitted)).

Additionally, when policy reasons lend themselves to such a result, fee awards have been granted even when a litigant is neither represented *pro bono* nor otherwise legally obligated to pay the attorney's fees. In *Ed A. Wilson*, for example, the court granted attorney's fees under the EAJA to a small business owner, even though his insurer paid the legal fees in his contract dispute with the Government over who was responsible for necessary repairs in a federal building when a sprinkler line broke during Wilson's remodeling of the building. *Ed A. Wilson*, 126 F.3d at 1407. The court noted that denying the right to attorney's fees to a small business that had astutely procured insurance, in order to protect itself from liability for accidents during contract performance, would thwart the EAJA's purpose of deterring "unreasonable governmental action". *Id.* at 1410.

23

In that regard, the court reasoned that denying attorney's fees would act as an incentive for the government to reject meritorious claims, because, "[i]f the small business has insurance, the government [can] deny the contractor's claim and litigate any appeal of the denial without pecuniary risk". *Id.* Further, without the availability of a fee award, the insurance company likely would have increased Wilson's insurance premium if it chose to litigate, "reintroduc[ing] the cost of litigation as a factor in the small business' decision whether to contest government action it deems unreasonable", *id.* at 1411, and subverting the purpose of the EAJA, which is to "allow[] a decision to contest Government action to be based on the merits of the case rather than the cost of litigating". *Id.* (quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 165 n.14 (1990)).

Fees have been allowed in the above circumstances, despite no legal obligation on the prevailing party to pay them, because doing so furthers the Congressional intent underlying the EAJA. The objective of the EAJA is clear: "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority". *Ardestani v. INS*, 502 U.S. 129, 138 (1991) (citing Congressional Findings and Purposes, 94 Stat. 2325, note following 5 U.S.C. § 504; H.R. Rep No.96-1418 pp. 10, 12 (1980); S. Rep. No. 96-253, p.5 (1979); *Jean*, 496 U.S. at 163). The EAJA's purpose is to "diminish the deterrent effect of seeking review of, or defending against, governmental action". *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989) (quoting 94 Stat. 2325). Accordingly, "EAJA awards should be available where the burden of attorneys' fees would have deterred the litigation challenging the government's actions, but not where no

such deterrence exists". *Tex. Food Ind. Assoc. v. Dep't of Agric.*, 81 F.3d 578, 585 (5th Cir. 1996) (quoting *Comserv*, 908 F.2d at 1415-16) (Garza, J., dissenting).

The above demonstrates that attorney's fees have been granted under the EAJA in the following broad circumstances: (1) under the general rule, in which the litigant actually incurs the legal obligation to pay the fees; (2) in situations in which an indigent litigant is represented *pro bono*; or (3) in a limited amount of residual situations in which policy dictates allowing fees to further the above-described goals of the EAJA. Against this backdrop, then, we must ask whether Claro's request, under the Hyde Amendment, for attorney's fees for his wife's paralegal work falls into an exception to the Hyde Amendment's incorporating the "incurred" requirement from the EAJA.

Again, in the definitional sense, Claro did not "incur" fees for his wife's assistance. She was not employed by any of the law firms representing Claro, she was not employed by Claro, and she did not bill him for her work.

Claro contends that there is no distinction between his wife's provision of paralegal services and a *pro bono* attorney's provision of legal services. He claims it was necessary for Mrs. Claro to provide her services "without a formal agreement or obligation to pay" for the same reason an indigent litigant seeks *pro bono* representation–because otherwise the burden of attorney's fees becomes a deterrent to litigation. Of course, Claro did not have the option of declining to litigate; he was a defendant in a criminal proceeding brought involuntarily into court by the Government. Moreover, Claro had competent legal representation, proving he was not deterred by the cost of representation from establishing a strong defense. No doubt, his attorney's fees may have been more expensive absent the aid of his wife, who was by all accounts of great

assistance to Claro's retained attorneys. But, *post-hoc* speculation about the relative effectiveness of his defense absent his wife's assistance cannot be sufficient to justify awarding attorney's fees for Mrs. Claro's *voluntary* labor, especially when there is no evidence that Claro's counsel's performance was in any way deficient, or would have been so without her aid.

Moreover, there is no indication that the additional fees Claro was able to avoid by his wife's voluntarily performing the labor would not have been covered under the Hyde Amendment if one of his attorneys' employed paralegals had performed the work. In other words, the additional expense would not have acted as a deterrent to litigation, because it would have been compensable, just as the fees were for Claro's attorneys and their paralegals.

This conclusion is strengthened when we examine the Supreme Court's above-discussed *Richlin* decision, which established that paralegal fees are recoverable under the EAJA at the prevailing market rate. While, as noted, courts have allowed recovery of fees when an attorney is providing free labor to his client in the form of *pro bono* representation, there is nothing in *Richlin* which establishes paralegal services should be treated similarly. Its discussion of paralegal fees was confined solely to those fees associated with paralegals employed by the law firm representing the plaintiff. *Richlin*, 128 S. Ct. at 2011. This is logical: without *pro bono* legal representation, many indigent clients could never pursue their claims in court. Without "pro bono" paralegal services, litigants can–and Claro did–still rely on representation from their retained attorneys. Of course, we do not suggest that an attorney representing a party *pro bono* could not be reimbursed for the services of a paralegal employed by that attorney.

Nor is the propriety of an award such as that requested by Claro suggested in *Missouri v. Jenkins*, 491 U.S. 274 (1989), which established the right to recover paralegal fees under 42 U.S.C. § 1988(b) and from which *Richlin* found a right to paralegal fees under the EAJA. *See Richlin*, 128 S. Ct. at 2014 ("Under the reasoning of *Jenkins*, we take it as 'self-evident' that when Congress instructed agencies to award 'attorney . . . fees' to certain parties prevailing against the Government, that term was intended to embrace paralegal fees as well."). In *Jenkins*, as in *Richlin,* at issue was whether the paralegals and law clerks employed by a civil-rights lawyer and the NAACP, which represented the plaintiff class in a school-desegregation action, should be compensated at the market rate for their services or at their lower cost to the attorney. *Jenkins*, 491 U.S. at 284.

The Court, in discussing the statutory language, noted that "reasonable attorney's fee" was not meant to "compensate only work performed personally by members of the bar", but rather "refer[red] to a reasonable fee for the work product of an attorney . . . . tak[ing] into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client". *Id*. at 285. While, of course, far more work than that of an attorney is often involved in developing the attorney's work product, the common thread uniting all of this compensable labor–secretaries, messengers, paralegals–is that they are employed with the purpose of furthering this goal. Claro's attorneys did not bill for Claro wife's labor because they could not; she was not employed by them and thus not obligated to provide her services in developing the attorney work product.

27

Finally, Claro's request for attorney's fees for his wife's labor does not fall into the residual category of circumstances that would further the goals of the Hyde Amendment. In fact, the implications of awarding attorney's fees for the work of an individual–a family member, no less–who provides voluntary, non-contractual, non-obligatory assistance to a prevailing party are troubling, to say the least.

In the above-cited cases–*Watford*, *Cornella*, and *Ed A. Wilson*–although the prevailing party had no obligation to pay attorney's fees, it nonetheless had a contractual attorney/client relationship with the party for whom the fees would ultimately be paid by a third party. Conversely, Claro's wife's services were voluntarily given, despite her desire that she be paid following the conclusion of the criminal proceeding. She could have discontinued her services to her husband and resumed her full-time work as a court reporter at any time. In contrast, a contractually-obligated attorney, *pro bono* or otherwise, does not have the unlimited freedom to extract himself from representation.

Extending the award of attorney's fees to the work of someone to whom a prevailing party was neither contractually nor financially obliged has the potential to open a Pandora's box of claims from litigants who assert a friend or family member was "of great assistance" in the litigation but who, ultimately, had no obligation to assist. While we do not suggest that Mrs. Claro was abusing the possible right to such an award, the potential for abuse if attorney's-fees awards were to be extended in such a manner is quite high. For example, what type of "assistance" would be compensable? Under what standards and for what amount would one compensate voluntary labor?

The difficulties in setting well-defined parameters for such an extension of the award of attorney's fees are obvious. As such, the wiser course, and the one we adopt, is to limit compensable fees to lawyers and fees produced by persons employed by lawyers to further the development of their work product. However valuable Mrs. Claro's services may have been, we decline to make them compensable under the Hyde Amendment.

## III.

For the forgoing reasons, the 31 July 2007 Order on Defense Fees and Expenses is AFFIRMED IN PART and VACATED IN PART; and this matter is REMANDED to district court for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; and REMANDED.